CASE 41—ACTION BY J. D. GARDNER AGAINST T. J. WINTER & CO. FOR DECEIT AND BREACH OF WARRANTY IN THE SALE OF SEED— JAN. 20.

## Gardner v. J. T. Winter & Co.

APPEAL FROM MASON CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. AFFIRMED.

SALE OF SEED—FAILURE OF CROPS—BREACH OF WARRANTY— PLEADING—CONSISTENCY OF PARAGRAPHS—QUESTION FOR JURY.

1. In an action against dealers in seeds for damages for failure of plaintiff's millet crop, two paragraphs of complaint, one count-

Gardner v. T. J. Winter & Co.

ing on breach of express warranty, as to the variety, and the other on breach of implied warranty as to the quality of the variety ordered, are not inconsistent.

2. Where plaintiff, relying on his own judgment and past experience, bought of defendants, who were dealers in seeds, a specific article, known as "Western German Millet Seed," there was no implied warranty that the seeds would germinate, and produce good crops, nor that they were reasonably fit for the purpose to which they were to be applied.

3. Where plaintiff, relying on his own judgment and past experience, ordered of defendants, who were dealers in seeds, a specific article, known as "Western German Millet Seed," the question, in an action for damages for breach of warranty, whether the seed sold to him actually belonged to that variety, is for the jury.

ALLAN D. COLE ATTORNEY FOR APPELLANT.

1. Appellant had an undoubted right in his first paragraph to sue for a breach of warranty, and in his second paragraph to sue for fraud and deceit, therefore, the motion to elect was properly overruled. McClintock v. Emick Stoner & Co., 87 Ky., 161.

2. The second paragraph containing the action for fraud and deceit was traversed, and proof introduced in support of the allegations; therefore, the court erred to the prejudice of appellant in refusing to give any instructions whatever upon this issue. Tipton v. Triplett, 1 Met., 574; Hanks v. McKee, 2 Litt., 227; Hughes v. Robertson, 1 T. B. Mon., 215; Cap v. Arberry, 2 J. J. Mar., 297; Scott v. Scott, 2 A. K. Mar., 217.

3. If a person makes a representation under such circumstances that he ought to know whether it is true or false, and it is, in fact, false, knowledge of its falsity may be implied. Ford v. McComb, 12 Bush, 723; Wheeler v. Boars, 33 Fla., 696; Thorn v. Prentice, 83 Ill. 99; Hubbard v. Ware 79 Iowa, 678.

4. A fraud may be perpetrated by the assertion of facts that do not exist, ignorantly made by one whom the person acting on the assertion has a right to suppose has used reasonable diligence to inform himself as by concealing facts known to exist. Prewitt v. Trimble, 92 Ky., 176.

5. Whether a party misrepresenting a fact knew it to be false or made the assertion without any precise knowledge of the subject, is immaterial; for the affirmation of what one does not know or believe to be true, is clearly, in law and morals, as unjustifiable as the affirmation of what is known to be positively false. Juzan v. Toulman, 9 Ala., 684; Evans v. Edmunds, 13 C.

B., 777; Fisher v. Miller, 103 Mass., 503; Lynch v. Mercantile
Trust Co., 18 Fed. Rep., 486; Fitzpatrick v. Reeves, 121 Ind.,
280; Stone v. Covell, 29 Mich., 539; Riggs v. Thorpe, 67 Munn,
217; Hamlin v. Abell, 120 Mo., 188; Morehead v. Eades, 3 Bush,
121; Campbell v. Hellman, 15 B. Mon., 508; Perkins v. Rice,
Litt. Sel Cases, 218.

6. Where a dealer contracts to supply an article in which he deals
to be applied to a particular purpose, so that the buyer neces-
sarily trusts to the judgment of the dealer, there is in that case
an implied warranty that it shall be reasonably fit for the pur-
pose for which it is to be applied. Gachet v. Warren, 72 Ala.,
288; Pacific Guano Co. v. Mullen, 66 Ala., 582; Benj. Sales, Sec.
157; Miller v. Gaither, 3 Bush, 152; Shaw v. Smith, 45 Kan.,
334; Johnson v. Sproull, 50 Mo. App., 121; Shatto v. Abernathy,
35 Minn., 538; Semms v. Howell, 49 G., 620; Gamwell v. Gun-
bay, 52 G., 504; Best v. Flint, 58 Vt., 543; Little v. Van Sycle,
115 Mich. 480.

CLARENCE L. SALLEE FOR APPELLEE.
CHAS. D. NEWELL OF COUNSEL.

### QUESTIONS DISCUSSED AND AUTHORITIES CITED.

1. The appellant wholly failed in his contention that appellees did
not sell him Western German Millet Seed.
2. An express warranty precludes an implied warranty.
3. In an action for fraud and deceit the scienter is the gist of the
action and must be both alleged and proved.
    Massie v. Crawford, 3 Mon., 219; Bacon v. Brown, 3 Bibb, 35;
Ball v. Lively, 4 Dana, 369; Campbell v. Hillman, 15 B. Mon.,
508; Warren v. Barker & Co., 2 Duvall, 155; Stewart v. Dough-
erty, 3 Dana, 480; Marksbury v. Taylor, 10 Bush, 519; Mattingly
v. Russell, 15 Rep., 875.

OPINION OF THE COURT BY JUDGE BURNAM—AFFIRMING.

The appellant, J. D. Gardner, brought this action against
the appellees, T. J. Winter & Co., for a breach of warranty
and deceit in the sale of eighteen bushels of Western Ger-
man millet seed. In the first paragraph of his petition he
relies upon a warranty by the defendants that the seed sold
to him was Western German millet seed, suitable for seed
purposes; and alleges that the seed was not of the quality

Gardner v. T. J. Winter & Co.

warranted, and that, in consequence thereof, his crop grown therefrom, was worthless, entailing upon him a· loss of $600.    In the second paragraph he alleges that the defendants fraudulently represented that the seed was of the best quality of Western German millet seed, suitable for seed purposes, when in fact it was not 'Western German millet seed, or suitable for sowing, and that the defendants knew it was not—alleging special damages as in the first paragraph.    The defendants, in their answer, admit that they sold to the plaintiff eighteen bushels of Western German millet seed, but deny the alleged warranty and deceit.    The trial resulted in a verdict and judgment for the defendants.

The plaintiff proved by a number of witnesses that his crop was almost an entire failure, and that this was not due to any defect in the preparation of the ground to receive the seed, or in its subsequent cultivation.    He testified that he had had large experience in the growth and cultivation of 'Western German millet seed, and that he had uniformly previous to this time had good success with it: that when he purchased the seed from the defendants he asked for Western German millet; that the defendant showed him two different kinds of millet seed, one known as "Southern German Millet," and the other as "Western German Millet," and advised him to purchase Southern millet, which was higher in price, but that, relying upon his previous experience with Western German millet, he decided to buy that seed; that the defendants, not having enough of this seed on hand, ordered from a wholesale seed house in Cincinnati, and had it delivered to him in the packages in which it was put up by the firm in Cincinnati. The testimony of the defendants was to the effect that there were two qualities of German millet seed—one grown in the South, which was raised almost entirely for seed purposes;

that this seed was cultivated in hills like corn; and that the seed was sent West and resown, and produced what was known to the trade as Western German millet seed to distinguish it from the genuine Southern seed; that, after the Western German millet seed had been resown for several years, it had a tendency to run out and deteriorate so that it did not produce so luxuriantly as the Southern seed. They also introduced testimony to the effect that the seed had germinated all right, but that early in June a severe drouth set in, which lasted until November, and that this prevented the millet, a hard crop on land, from growing on thin land like the plaintiff's. At the conclusion of the testimony plaintiff asked the court to instruct the jury on the warranty set out in the first paragraph of his petition, and also the alleged deceit practiced upon him set out in the second paragraph. The court thereupon gave to the jury the following instructions: "(1) The court instructs the jury that if they believe from the evidence that the defendants, Winter & Co., sold to plaintiff, Gardner, a quality of millet seed as Western German millet seed, and that said seed was not Western German millet seed, then they will find for plaintiff such sum as they may believe from the evidence plaintiff has been damaged by reason of the seed not being Western German millet seed, not exceeding the sum of $600, the amount claimed in the petition." "(3) If the jury believe from the evidence that the seed sold and delivered by defendant to plaintiff was of the kind and quality of millet seed commercially known under the description of 'Western German Millet Seed.' then they will find for the defendants."

The first question for decision is the refusal of the trial court to require plaintiff to elect whether he would proceed upon the express or implied warranty relied upon in the

first and second paragraphs of the petition. This motion, we think, was properly overruled, as there is nothing inconsistent in the pleas, and we know of no rule of pleading which would estop the plaintiff from relying on both in a suit for damages based upon the same transaction. It is contended for appellant that he was entitled to an instruction based upon the alleged implied warranty set up in the second paragraph of his petition, on the ground that a manufacturer or dealer who sells an article at a fair market price, knowing the purchaser designs to apply it to a particular purpose, impliedly warrants it to be fit for that purpose. The appellant did not testify to the allegations contained in both paragraphs of his petition that the defendants warranted and represented the seed to be "fit and suitable for seed purposes" and for sowing on his land, but only that the seed was warranted or represented by the defendants to be Western German millet seed. The general rule applicable to the question is well settled by all the leading text-writers.

In 2 Benjamin on Sales, sections 987, 988, the rule is stated as follows: "Where a manufacturer or dealer contracts to supply an article which he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is in that case an implied term of warranty that it shall be reasonably fit for the purpose to which it is to be applied. . . . But when a known, described, and defined article is ordered of a manufacturer, although it is stated to be required by the purchaser, for a particular purpose, still, if the known, defined, and described thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer." In Leake on Contracts, 404, the same rule is stated thus: "If an order be given for the manufacture or sup-

ply of an article to satisfy a required purpose, that purpose, and not any specific article, being the essential matter of the contract, the seller is then bound, as a condition of the contract, to supply an article reasonably fit for the purpose, and is considered as warranting that it is so. But if an order be given for a specific article of a recognized kind or description, . . . and the article is supplied, there is no warranty that it will answer the purpose described or supposed, although intended and expected to do so." 1 Parson on Contracts, 586, 587, states the rule thus: "If the thing be ordered of a manufacturer for a special purpose. and it be supplied and sold for that purpose, there is an implied warranty that it is fit for that purpose. This principle . . . must be limited to the cases where a thing is ordered for a special purpose, and not applied to those where a special thing is ordered, though this be intended for a special purpose." Lawson on Contracts, section 57, subsection 8, states the rule as follows: "Where goods are sold for a particular purpose (that purpose, and not any specific article, being the essence of the contract), there is an implied warranty that the article is reasonably fit for that purpose." There is no evidence in this case of any intended fraud or deceit by the defendants in the sale of the seed to plaintiff, On the contrary, it is quite clear that, relying upon his own judgment and past experience, plaintiff bought of the defendants a specific article, known and recognized as "Western German Millet Seed." Under these circumstances there was no implied warranty that the seeds would germinate, and produce good crops, or that they were reasonably fit for the purpose to which they were to be applied. The only issue between the parties was whether the seed sold actually belonged to the variety of Western German millet seed. The instructions fairly submitted this issue to the jury whether

the failure in plaintiff's crop was due to defective seed or was to be attributed to the proverty of his soil, the scarcity of rain, or the other innumerable risks which attend the sower, is hard to determine.    Plaintiff's experience is aptly described in the parable of the sower and the seed:    "Behold, a sower went forth to sow; and when he sowed, some seeds fell by the way side, and the fowls came and devoured them up; some fell upon stony places, where they had not much earth, and forthwith they sprung up, because they had no deepness of earth; and when the sun was up, they were scorched; and because they had no root, they withered away."

For reasons indicated, the judgment is affirmed.

Petition for re-hearing by appellant overruled.