**MOUNTAIN IRON & SUPPLY CO. v. BRADEN et al.**

District Court, D. Kansas, Second Division.
January 10, 1929.

No. 969.

J. B. McKay, of El Dorado, Kan., and Vermilion, Evans, Carey & Lilleston, of Wichita, Kan., for plaintiff.

Yankey, Gleason & Cox, of Wichita, Kan., and C. L. Aikman, of El Dorado, Kan., for defendants.

POLLOCK, District Judge. This is an action at law brought by the plaintiff to recover from defendants the purchase price of a lot of piping used in drilling an oil well. The plaintiff company is a supply company purchasing the piping from manufacturers thereof to be used in drilling of oil and gas wells in the oil fields, and are not the manufacturers or producers of the supplies they keep on hand and sell to the trade. Defendants are oil well drillers, and at the time the piping in this case was purchased from and supplied by plaintiff were engaged in putting down an oil well in Reno county, this state, to a depth of some 4,000 feet. The defendants admit the purchase of the piping from plaintiff and the amount of the purchase price unpaid, except they claim a much larger sum from plaintiff by way of a cross-demand or counterclaim for damages arising by reason of defects in the casing, claimed from the fact the casing furnished was, as known to plaintiff, purchased for a special use in drilling a very deep well, and that the same was thus warranted by plaintiff reasonably fit for the special use for which it was purchased.

The question presented for decision is this: In a case such as this, where a well-known chattel is purchased, not from a manufacturer or producer of the same, but from a dealer therein, is there implied a warranty on the part of the dealer of reasonable fitness for the known use for which it is purchased, or does the common law rule of caveat emptor apply in such a case?

In Seitz v. Brewers' Refrigerating Co., 141 U. S. 510, 12 S. Ct. 46, 35 L. Ed. 837, Mr. Chief Justice Fuller, delivering the opinion for the court, said:

"Plaintiff in error contends, secondly, that there was an implied warranty, arising from the nature of the transaction, that the machine should be reasonably fit to accomplish certain results, to effect which he insists the purchase was made. It is argued that the evidence tended to establish that the plaintiff knew that the defendant had been cooling his brewery with ice, and that the object of obtaining the machine was to render unnecessary the expense of purchasing ice for that purpose; and that unless the machine would cool it to the same extent, or

about the same, as the ice did, it would be worthless, so far as he was concerned. It is not denied that the machine was constructed for refrigerating purposes, and that it worked and operated as a refrigerating machine should; but it is said that it did not so refrigerate as to reduce the temperature of the brewery to 40 degrees Fahrenheit, or to a temperature which would enable defendant to dispense with the purchase of ice.

"The rule invoked is, that where a manufacturer contracts to supply an article which he manufactures, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment of the manufacturer, the law implies a promise or undertaking on his part that the article so manufactured and sold by him for a specific purpose, and to be used in a particular way, is reasonably fit and proper for the purpose for which he professes to make it, and for which it is known to be required; but it is also the rule, as expressed in the text-books and sustained by authority, that where a known, described and definite article is ordered of a manufacturer, although it is stated by the purchaser to be required for a particular purpose, still, if the known, described and definite thing be actually supplied, there is no warranty that it shall answer the particular purpose intended by the buyer. Benjamin on Sales, § 657; Addison on Contracts, Book II, c. vii, p. 977; Chanter v. Hopkins, 4 M. & W. 399; Ollivant v. Bayley, 5 Q. B. 288; Dist. of Columbia v. Clephane, 110 U. S. 212 [3 S. Ct. 568, 28 L. Ed. 122]; Kellogg Bridge Company v. Hamilton, 110 U. S. 108 [3 S. Ct. 537, 28 L. Ed. 86]; Hoe v. Sanborn, 21 N. Y. 552 [78 Am. Dec. 153]; Deming v. Foster, 42 N. H. 165."

In Barnard v. Kellogg, 10 Wall. (77 U. S.) 383, it is said:

"No principle of the common law has been better established, or more often affirmed, both in this country and in England, than that in sales of personal property, in the absence of express warranty, where the buyer has an opportunity to inspect the commodity, and the seller is guilty of no fraud, and is neither the manufacturer nor grower of the article he sells, the maxim of caveat emptor applies. Such a rule, requiring the purchaser to take care of his own interests, has been found best adapted to the wants of trade in the business transactions of life. And there is no hardship in it, because if the purchaser distrusts his judgment he can require of the seller a warranty that the quality or condition of the goods he desires to buy corresponds with the sample exhibited. If he is satisfied without a warranty, and can inspect and declines to do it, he takes upon himself the risk that the article is merchantable. And he cannot relieve himself and charge the seller on the ground that the examination will occupy time, and is attended with labor and inconvenience. If it is practicable, no matter how inconvenient, the rule applies. One of the main reasons why the rule does not apply in the case of a sale by sample, is because there is no opportunity for a personal examination of the bulk of the commodity which the sample is shown to represent. Of such universal acceptance is the doctrine of caveat emptor in this country, that the courts of all the States in the Union where the common law prevails, with one exception (South Carolina), sanction it."

In Reynolds v. General Electric Co., 141 F. 551, Judge Sanborn, delivering the opinion for the Court of Appeals of this Eighth Circuit, said:

"It is said that an implied warranty arose from the sale to the effect that the pump should be fit and proper for the pumping of water in the shaft of a mine, and that this covenant was broken. If the pump was unfit to do the work which machines of that nature ordinarily perform, that condition arose from latent defects in the material of which it was constructed, or in the workmanship bestowed upon it, of which the plaintiff had no notice. The electric company secured and delivered the article of the known manufacture which the mines company had selected, and which was described in the contract. A manufacturer is charged by the law with notice of latent defects in the design, materials, and construction of the machines he makes which unfit them to perform the ordinary work of such articles, because he furnishes the design, the materials, and the workmanship, and thus either causes or permits the defects. Out of this state of facts and an agreement of sale an implied warranty arises on the part of the manufacturer that the machines he makes are suitable for the general purposes for which such articles are commonly used. Goulds v. Brophy, 42 Minn. 109, 112, 43 N. W. 834, 6 L. R. A. 392. But where such a purchaser buys of a dealer a definite machine of known manufacture, which has been, or is to be, made by a builder who is not the vendor, and the vendee knows this fact, there is no implied warranty by the dealer, either against latent defects or that the machine or article will be suitable for the purposes for which such articles are commonly used, because the purchaser has the same knowledge and means of knowledge of

these subjects as has the dealer. The vendee knows that they both rely on the character and reputation of the manufacturer. Bragg v. Morrill, 49 Vt. 45, 47, 24 Am. Rep. 102; American Forcite Powder Mfg. Co. v. Brady, 4 App. Div. 95, 97, 38 N. Y. Supp. 545; Gardner v. Winter [T. J. Winter & Co.] [117 Ky. 382] 78 S. W. 143, 63 L. R. A. 647, 649."

To like effect is the holding by the Supreme Court of this state in Jarecki Mfg. Co. v. Merriam, 104 Kan. 646, 180 P. 224, and in Illinois Zinc Co. v. Semple, 123 Kan. 368, 255 P. 78.

Now, applying the fundamental rules stated in above cases, and a wealth of others to be found in the books, and the matter here presented seems easy of solution. The casing purchased was bought of a dealer, not of a manufacturer who made it for a peculiar or special known purpose or use. The defects in the pipe of which complaint is now made by defendants in the cross-demand or counterclaim were latent defects of which the plaintiff from the very nature of things could know nothing more and was no more able to judge than were the defendants. The defendants hauled this casing out to the ground where the operation was being conducted, there piled it up some considerable time before using it in their operation of putting down the well, and thus defendants had as full opportunity, if the same was not suitable for their use, to have rejected and returned it, not using the same, as had the plaintiff to judge of its strength and soundness. In any event, although plaintiff did know, as pleaded by defendants, the particular use to which defendants desired to put this casing, there was no warranty on the part of plaintiff implied of fitness for such use. Hence, the motion, regarded more as a demurrer to the two paragraphs mentioned, must be and is sustained.

It is so ordered.