## Hobdy and Read v. Siddens, et al.

(Decided March 9, 1923.)

### Appeal from Allen Circuit Court.

1. Sales—Breach of Warranty of Seed Variety Entitles Buyer to Difference of Value Between Crop Produced and Crop which Should have Resulted.—Where seed is warranted as to kind, and the seller knows that the seed is to be planted by the buyer, and it is so planted, the seller is answerable for the difference between the value of the product of the seed planted and the value of the product that would have resulted, if it had corresponded to the warranty.

2. Sales—Evidence Held to Sustain Recovery for Breach of Warranty as to Variety of Seed.—Where plaintiff testified, and defendant admitted, that defendant warranted the seed sold to be German millet seed, and that plaintiff sowed the seed in proper soil, but received only an inferior crop of wild grass hay, which was worth less than he paid for the seed, the evidence sustained the judgment allowing plaintiff the value of the crop of millet he might reasonably have expected, if the seed had been as warranted.

3. Sales—Evidence Held to Show Agent of Wholesaler Warranted Variety of Seed.—Testimony by a retailer and by the salesman of the wholesaler that the latter sold German millet seed to the retailer, to be sold to his customers for sowing, with assurance that the seed was true big-headed German millet, conclusively establishes that the wholesaler, through its agent, warranted the seed sold to the retailer.

4.  Principal and Agent—Salesman has Apparent Authority to Warrant Variety of Seed.—A salesman for a wholesale seed company, who had during several years sold seed to a retailer, was within the apparent scope of his authority when he warranted certain seeds sold to be of a particular variety, although notices on his principal's letterheads and on tags attached to its bags of seed contained notice that the wholesaler made no warranties.

5.  Sales—Sale of Seed by Name Raises Implied Warranty.—A sale of seed by name raises an implied warranty that it is true to name, and the fact that the buyer inspected it before buying is immaterial, if its character could not be ascertained by a reasonable inspection.

6.  Sales—Wholesaler, Warranting Variety of Seed, is Liable for Buyer's Liability on Similar Warranty.—When a wholesale seed dealer sold seed to a retailer with warranty they were of a particular variety, and with knowledge that the retailer intended to sell them again to persons who would sow them, and thereafter the retailer was held liable to his customer for breach of warranty as to the variety of the seed, the wholesaler thereby became liable to the retailer for the amount recovered from the latter.

MORRIS & JONES, W. D. GILLIAM and GILLIAM & GILLIAM for appellants.

DAVIS, PAIGE & DOWNING, OLIVER & DIXON and F. R. GOAD for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—
Affirming in part and reversing in part.

This is an appeal from a judgment in a suit commenced in the Allen circuit court for the purpose of recovering damages for breach of warranty as to kind and quality of millet seed. Appellee Siddens, a farmer owning a rich river bottom farm in Allen county, purchased of appellants, Hobdy and Read, retail seed merchants, at Scottsville, forty bushels of German millet seed at the price of $3.75 per bushel, to be delivered April 1, 1920. As the merchants did not have the seed on hand at the time they agreed to procure same for appellee Siddens and did so and later appellee sent his wagon to the store and obtained the seed and carried the same to his farm where it was sown on a fifty-acre tract of fine, rich bottom land, after the same had been put in proper condition to receive the seed. When the seed germinated and grew it was discovered, according to the contention of appellee Siddens, that the harvest was going to be something very different from millet. Ac-

cording to his testimony it was some kind of unknown wild grass which produced a hay of very little value. It is further alleged "that had said seed been the kind and character bought and the kind and character warranted, represented and sold by the defendants to him that on said 50 acres he would have, at a low estimate, produced one ton of first class millet per acre or a total of 50 tons upon said 50 acres; that said hay would have reasonably been worth on the open market, and was worth and would have sold for $1.00 per hundred weight or more or $1,000.00 is a reasonable and low value of said crop in said year if said seed had been as warranted and represented by the defendants.

"Plaintiff says that as result of sowing said seed there was only produced some kind or character of wild grass or other filth, which has no value for feeding purposes and could only be used for bedding stalls, filling ditches or a similar purpose and that the total amount of this character of the growth produced would not and did not exceed 10 tons and at a high estimate was not worth exceeding 75c per 100 or a sum total of $150.00."

Appellants Hobdy and Read filed answer and cross-petition. By the answer they controverted part of the affirmative averments of the petition and admitted in substance that they had sold the seed to appellee Siddens at the price stated in the petition and had warranted the said seed to be genuine German millet. By their cross-petition they made the National Seed Company of Louisville, a party defendant, averring that they had purchased the seed from the National Seed Company as German millet and that the said seed company had warranted the same to be the best quality German millet seed. The answer and cross-petition concluded with a prayer that the plaintiff's petition be dismissed; that defendant, National Seed Company, be summoned as a defendant on cross-petition and be made a defendant, and in the event the court should hold Hobdy and Read liable in damages to appellee Siddens, then they prayed that they have recovery over against the National Seed Company for a like amount. Issue being joined and evidence taken the chancellor to whom the law and facts were submitted, the cause having been on motion of appellants and National Seed Company transferred to equity, entered a judgment in favor of appellee Siddens against Hobdy and Read for $1,000.00, and dismissed the cross-petition of appellants Hobdy and Read against

the National Seed Company. This appeal is prosecuted by Hobdy and Read against both Siddens and the National Seed Company. There is no cross-appeal.

The principle upon which this action rests has been stated in several opinions in substance as follows:

Where seed is warranted as to kind and the vendor knows that the seed is to be planted by the vendee, and it is so planted, the vendor is answerable for the difference between the value of the product of the seed planted and the value of the product that would have resulted had the seed corresponded to the warranty. Dunn v. Bushnell, 63 Neb. 568, 93 Am. St. Reports 474; White v. Miller, 71 N. Y. 118; L. R. A. 1916C 1001; Crutcher v. Elliott, 13 R. 592; Garden v. Winter, 117 Ky. 382. See also Buckbee v. Hohenadel Co., L. R. A. 1916C, 1001.

The petition sufficiently stated a cause of action in favor of appellee Siddens against appellants, Hobdy and Read, for breach of warranty, and the cross-petition against the National Seed Company was equally sufficient. Appellee Siddens testified unequivocally that when he purchased the seeds from appellant Read with whom he dealt, Read on behalf of his firm warranted the said seed to be first class German millet seed, suitable for sowing. He is corroborated in this by Read of the firm of Hobdy and Read who states in substance the same. It is further shown by the evidence introduced by appellee Siddens that the crop produced on his bottoms was not that of German millet and was of very little value; that his land was rich and well suited to millet and that before he sowed the seed in question he prepared the land in the most approved fashion to receive the seed; that the season was good for millet, and that the said land should have produced, had the seed been German millet, at least a ton of hay per acre, which said hay would have been reasonably worth a total of something more than $1,000.00; that he paid $150.00 for the seed; that the crop he obtained from the said fifty acres was worth only about $150.00, and that he had been damaged by loss of crops at least $1,000.00. These facts were well established.

Appellee, National Seed Company, defended chiefly upon the ground that it made no warranty of the seed which it sold to Hobdy and Read. In support of this contention it proved that the custom among millet seed dealers was to sell such seed without warranty. It further proved that upon its letterheads and stationery, includ-

ing bills, and order blanks, there was printed in plain type in substance the following:

"We give per cent of purity or germination for the benefit of our customers. These tests are carefully prepared, but not guaranteed. . . . All seeds are selected with great care but we give no warranty either express or implied. We do not guarantee any of them nor will we be responsible for the crop. If not accepted on these conditions, goods must be returned at once. . . . The above purity and germination test is secured from reliable sources and is for information only and without guarantee. We give no warranty, express or implied, as to description, quality, productiveness or any other matter of any seeds we send out and we will not be in any way responsible for the crop."

It further says that upon each of the bags containing the seeds sold and delivered to appellants, Hobdy and Read, there was a shipping card or ticket containing printed matter in substance the same as the foregoing non-warranty provisions.

The National Seed Company charges that appellants Hobdy and Read, purchased the seed with the understanding that there was no warranty; that appellants had actual knowledge that appellee National Seed Company did not warrant its seeds. It admits, however, that it sent its salesmen to Scottsville in Allen county and sold seeds to appellants, Hobdy and Read, and that its said agent while in Scottsville sold to appellees at least 100 bags of seed which were later delivered to appellants and for which appellants paid appellee, National Seed Company, the full price. Its agent, Mr. W. F. Alvis, who took the said order, testified in substance that he sold the seeds to appellants Hobdy and Read for German millet to be sold to their customers for sowing. He was asked: "Q. The 100 bags of true German big-headed German millet were shipped to them after their purchase? A. Sure. Q. How many years have you been knowing of Hobdy and Read, or selling them seed? A. Ever since I have been connected with the National Seed Company, some five or six years. . . . Q. With which member of the firm of Hobdy and Read, did the National Seed Company deal in making this sale? A. Mr. Read. Q. And that took place at their warehouse in Scottsville? A. Yes, sir. . . . Q. I will ask you if Mr. Read did not state to you they had been handling the Tennessee millet before this time and if he did not raise

the question as to whether the seed which the National
Seed Company proposed to sell was the true German
big-headed millet? A. Yes, sir; he did. He did not state
he had been handling the Tennessee millet but he asked
me if it was the big-headed German millet? Q. Did they
further state the seed which he had been handling was
the Tennessee millet and had given entire satisfaction
and he was particularly interested in procuring the true
German big-headed German millet that would satisfy
his local trade, and didn't you assure him the seed which
you sold him was the big-headed German millet. Q. Did
you have authority from the National Seed Company to
say to Mr. Read that the seed he purchased was the true
German big-headed millet? A. Yes, sir.''

Mr. Read who made the purchase for appellants tes-
tified that the agent, Mr. Alvis, warranted the seed to
be big-headed German millet suitable for sowing, and
exhibited to him a sample which the agent said he had
taken from the stock in its warehouse in Louisville. It
therefore appears to be conclusively proven that the
National Seed Company did in fact, through its agent,
warrant the seed sold to appellee Hobdy and Read to be
big-headed German millet, suitable for sowing. In the
absence of an actual warranty, such as made by Alvis
for and on behalf of his employer, appellee National
Seed Company, the non-warranty tags, cards, letter-
heads and bills, together with proof of the general cus-
tom among seed dealers not to warrant seeds, would
perhaps be sufficient to defeat a recovery in a case like
this. But Alvis had authority to act for and on behalf
of the appellee seed company. He was offering to sell
and was selling seed for it. He had been its representa-
tive for several years and had called upon appellants
at different times and sold them seed. Whether he had
actual authority from his employer to warrant the seed
is not so material, for he was acting within the appar-
ent scope of his authority when he said to Mr. Read, of
the firm of Hobdy and Read, that the seed were first
class big-headed German millet seed, and assured him
that the said seeds were first class in every respect. Al-
though appellee National Seed Company at the time had
a general rule not to warrant the quality of its seed it
had the power to make such warranties in specific sales
as the evidence shows it did in this case, and its agent
Alvis in offering the seed for sale and in selling them,

was acting in the apparent scope of his authority when he made such warranty and the appellants had the right to rely upon said warranty in the purchase of said seed. Godshaw v. J. N. Struck & Bro., 109 Ky. 285, 21 R. C. L., p. 854, 2 C. J., p. 832.

It is also a well recognized principle that a sale of seed by name raises an implied warranty that it is true to name; and the fact that the buyer inspected it before buying is immaterial when its character could not ordinarily be ascertained by a reasonable inspection. 105 Miss. 296, 62 So. 273. (Citing note in 37 L. R. A. (N. S.) 79; L. R. A. 1916C, p. 1012.) So where a certain variety of seed for seeding is called for, and seed is furnished in response to such a call, there is a warranty that it is true to the description unless the seller advises the purchaser that the sale is made without warranty. Ross v. Northup K. & Co. (1914), 156 Wis. 237.

It is clearly shown that the seed which the National Seed Company sold to appellants was the same which appellants sold to appellee Siddens. It, therefore, appears that the appellee National Seed Company did not furnish to appellants, Hobdy and Read, the character of seed which it sold them and which it warranted to be big-headed German millet, suitable for sowing. The warranty was, therefore, broken and appellants, Hobdy and Read, were entitled to recover of appellee National Seed Company at least as great an amount as that which the appellee Siddens recovered of appellants.

Sutherland in his work on damages states the doctrine in this way: "Where seeds are sold with a warranty that they are of a kind identified by a particular name, with notice that the purchaser intends to sell them again to persons who will purchase for the purpose of sowing them, if the warranty is untrue there seems to be no difference in principle as to the subject of damages between such a sale and one with such warranty where the purchaser is known to buy for the purpose of sowing them himself. The warranty to one buying seed to sell again justifies him in warranting it accordingly to his customers; and as they have recourse to him for damages estimated by the standard mentioned in the first paragraphs of the preceding section, that is also the measure of his loss as against his vendor."

The liability incurred by the vendee to the subvendee upon a like warranty to that given to the vendee by his

vendor, enables the vendee to recover damages on that liability from the vendor. Randall v. Raper El. Bl. & El., 84, 27 L. J. Q. B. (N. S.) 266; 6 Week's Rep. 445; Ellison v. Johnson, 74 S. C. 202, 5 L. R. A. (N. S.) 1151; 3 Sutherland on Damages, *supra;* Passinger v. Thorburn, 34 N. Y. 634; Buckbee v. Hohenadel Co., L. R. A. 1916C, 1001.

We have carefully examined the record and we find no reason for disturbing the judgment entered by the lower court in so far as it awards appellee Siddens damages in the sum of $1,000.00 against appellants Hobdy and Read, but that part of the judgment dismissing appellants' cross-petition against the National Seed Company must be reversed. On a return of the case to the lower court it will set aside that part of the judgment dismissing the cross-petition against the National Seed Company and enter in lieu thereof a judgment in favor of appellants Hobdy and Read against the National Seed Company for the sum of $1,000.00 and interest and cost.

For the reasons indicated the judgment is affirmed in part and reversed in part.