### Duncan, et al. v Dean.

(Decided November 11, 1924.)

### Appeal from Henry Circuit Court.

1. Sales—Article Ordinarily Impliedly Warranted Suitable for Purpose Intended.—*Ordinarily, where a manufacturer, producer, or dealer sells an article for particular purpose, he impliedly warrants that it is suitable and fit for that purpose, though this depends on facts and circumstances attending sale.*

2. Sales—No Implied Warranty of Fitness where Purchaser Selects Specific Article.—Where purchaser selects specific article, rule that where article is sold for particular purpose it is impliedly warranted to be suitable for that purpose, does not apply.

3. Sales—No Implied Warranty that Officially Labeled Grass Seed is Free of Daisy Seed.—No implied warranty exists that officially labeled orchard grass seed is free of daisy seed, in view of Kentucky Statutes, sections 1376b-1 to 1376b-13, which take place of implied warranties.

4. Sales—Plaintiff Pleading and Testifying Only to Express Warranty Not Entitled to Instruction on Implied Warranty.—Plaintiff pleading and testifying to express warranty only, was not entitled to instruction on implied warranty.

H. K. BOURNE for appellant.

J. BALLARD CLARK and W. B. MOODY for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Reversing.

In a suit in the Henry circuit court, W. J. Dean recovered a judgment against the firm of Duncan & Shirley for the sum of $350.00 for breach of contract in the sale of certain grass seed to him in the spring of 1920. Defendants have prayed an appeal and a reversal.

It is alleged in the petition "the defendants represented and warranted said seed to be first class seed and free from foreign seed and the best quality of such seed to be obtained and that he relied on said warranties; that the seed were not first class seed, but contained a large mixture of daisy seed; that he sowed same without any knowledge of this fact, and that the daisy seed germinated and grew to his great injury, &c." All of which was controverted.

On the trial plaintiff testified as to the contract: "I called Mr. Duncan and told him, talked to him about some seed, orchard grass seed, and he gave me a price on two kinds of seed, one $2.50 (two dollars and fifty cents and one $3.50 (three dollars and fifty cents). He says, 'Now, Mr. Billie, I would not advise you to buy the $2.50 seed. . . . The $3.50 seed is our very best recleaned seed, and seed we stand behind.' " He further testified that prior to that time there were no daisies on his farm, that he sowed the seed purchased, but in so doing did not discover the daisy seed, and such seed germinated, and while the grass and clover also came up, fully fifty per cent of the crop produced was daisies. The daisy is of no value for feed, is very tenacious of life and hard to eradicate from the soil; that he mowed this field while the grass was green in order to prevent the daisy seed from maturing and thereby the hay was moulded, and while he hauled part of it to his barn and fed it, the hay was of very little value; that there were about fifteen tons of hay that otherwise would have been worth about $20.00 a ton. Also for the reasons indicated the presence of the daisies decreased the value of his farm materially. As to the presence of the daisies in his crop and their effect, as well as their former absence from his farm, he is corroborated by a number of witnesses.

On the other hand, Mr. Duncan, the one with whom the contract was made, denies appellees' version. He testified that he is engaged in the implement and seed

business, and does not produce seed for sale to retailers; that his firm purchases seed from various wholesale firms and handles only the best they can buy; that the seed in question was sacked and tagged in accordance with the pure seed law of this state, and the only knowledge he had of its quality and condition was derived in this way; that he did not tell plaintiff that the seed in question was the best recleaned seed or that he would stand behind it; that he probably recommended to him that it would be safer and more advantageous to him to buy the better quality of seed, but otherwise gave no guarantees at all; that the tags showed the germination and purity test of the seeds, and that daisies are not condemned by the pure seed law of this state.

There is evidence to the effect that the plaintiff procured hay the preceding year in which there were daisies, and scattered the manure produced therefrom over his farm, also that daisies are common on the different farms in the neighborhood.

The defendant offered the following instruction:

"Unless the jury believe from the evidence that the defendant or defendants warranted and represented to the plaintiff that seeds sold were free from daisy seeds, then they should find for the defendants unless they further believe they knew at the time when seed was sold to the plaintiff it contained daisy seed."

This was refused and the court instructed the jury on its own motion:

"If the jury believe from the evidence that the orchard grass seed bought by plaintiff from defendant contained daisy seed, and after sowing said seed a large crop of daisies sprung up as a direct result from the sowing of said orchard grass seed and injured the field for hay the following year and injured the saleable value of defendant's farm, the law is for the plaintiff and the jury should so find. Unless the jury so believe it should find for the defendants."

Refusing the first and giving the second instruction constitute the alleged errors of the court.

In disregarding the issue of fact as to express warranty, and instructing the jury to find for the plaintiff if daisy seed were mixed with the seed he bought and

were sown by him to his injury, the court evidently considered the appellants liable on an implied warranty.

Ordinarily where a manufacturer, producer or dealer sells an article for a particular purpose, he impliedly warrants that it is suitable and fit for that purpose, Parsons on Contracts, section 586; Lawton on Contracts, section 57; 35 Cyc., page 402; Benjamin on Sales, section 987; Gardner v. Winter, 117 Ky. 382; Hobdy v. Siddens, 198 Ky. 201, and authorities cited; though this depends on the facts and circumstances attending the sale, as these may indicate or repel such warranty. Yandell v. Anderson, 163 Ky. 702.

A different rule applies where the purchaser selects a specific article, as it is deemed that he then relies on such selection and not on the implied warranty that otherwise exists. (See same authorities.)

Also, "A dealer who sells mill feed to a customer in the original packages, without any representation as to its quality, is not liable to the customer for the loss of his oxen to which the mill feed was fed, they having died by reason of ground glass contained in the mill feed." Syllabus, Walden v. Wheeler, 153 Ky. 181. See also Peaslee-Gaulbert v. McMathis' Admr., 148 Ky. 265.

We deem it unnecessary at this time to either distinguish or harmonize the above cases, for the reason in our opinion the matter is now regulated by statute.

The General Assembly at its 1904 session passed an act to prevent the adulteration, mixing or misbranding of grass seed. This was amended at the 1906 session, and again by an act aproved March 1, 1916, entitled, "An act regulating the sale of agricultural and other seeds," being sections 1376b-1 to 1376b-13, Carroll's Kentucky Statutes.

In this act, by the first section, various agricultural seeds are defined; by the third, noxious seeds are defined and a sale of a mixture of the two is forbidden.

By the second section it is provided, that every lot of agricultural seed, as defined in the first section, which is offered for sale shall be accompanied by a plainly written or printed statement in the English language stating (a) the name of the seeds, (b) name or names of the person or persons offering the seeds for sale, (c) the approximate percentage by weight, of purity or freedom from foreign matter or from other seeds, . . . (e) the approximate percentage of germination as shown by laboratory tests.

Section 1376b-4 provides: "The percentage of purity required under section 1376b-2 of this act shall be based upon a test or analysis conducted either by the entomologist and botanist of the Kentucky Agricultural Experiment Station, or his assistants, or by the vendor of the seeds, or his agents; provided such tests or analysis made by the vendor, or his agents, shall conform to the regulations and methods of testing used by the association of official seed analysts, and shall be subject to retest by the experiment station."

Clover and orchard grass seed are included in the first section of the act and are, therefore, protected by it; daisy seed is not referred to in the third section of the act, which defines noxious seeds, but the presence of daisy seed in field seeds would be regulated by paragraph "C" of the second section, which requires the percentage of purity from other seeds to be stated on the label.

The provisions of the statute take the place of the implied warranties and will enter into ordinary contracts, and if the seeds have been regularly tested by the proper state official, and the statement made out according to his test, and the bags containing the seed labeled therewith, the dealer should not be held liable unless the contract of sale includes an express warranty. If the vendor makes his own test, or such test is made by a state official, and the vendor fails to furnish him with a true sample of the seeds to be sold, the tags would furnish no protection except to show the character of warranty in the sale, though if sued the vendor could show the results of his tests in evidence.

In this case it is admitted that attached to each sack of seed sold there was a tag containing a statement under the statute. Those tags were not produced on the trial. Perhaps their loss was accounted for by plaintiff, but he does not undertake to show what the statement contained. As it was essential for the statements to show the percentage of purity of the clover and orchard grass seed it may be assumed that they did so. Further, there was no plea of a breach of the statutory provision, so that in the condition of the record the plaintiff was not entitled to an instruction upon either an implied warranty or upon the statutory provision.

Plaintiff pleaded and testified to an express warranty only, hence he was entitled to an instruction on that alone.

The proceedings in the court below did not conform to this view of the law, and therefore an appeal is granted, the judgment reversed, and the cause remanded for proceedings consistent with this opinion.