## Wedding et al. v. Duncan et al.

January 28, 1949.

Rehearing denied June 14, 1949.

376

Pentecost & Dorsey and Wilson & Wilson for appellants.

King & Flournoy for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Sometime in the latter part of May 1945, appellee, V. B. Duncan, a tenant farmer on the lands of his co-appellee, W. P. Cooper, purchased from Eugene Wedding, alleged agent of Owensboro Grain Company, 15 bushels of Funk's G-515W seed corn for the purpose of planting. He planted this corn on 110 acres of his landlord's land in what is known as the Ohio River Bottoms. According to the record this corn germinated well, produced good stalk, good leaf, and the usual shoots or ears on the stalks. Prior to its maturity Duncan discovered that the kernels on the ear were sparse and had not filled out as they should have, due, as he concluded after consulting experts on hybrid seed corn, to lack of pollination resulting from inferior seed. The field of corn was marketed, however, and found to produce less than a ½ crop or about 30 bushels to the acre.

Duncan and his landlord, Cooper, filed this action against appellants, Eugene Wedding and Owensboro Grain Company, basing their claim to recover upon an express warranty. There is no claim for recovery on any ground of fraud, implied warranty, or violation of the statute governing the sale of seeds.

Upon trial judgment was returned in favor of appellees. Wedding and the Owensboro Grain Company, defendants below, prosecute this appeal.

It is first insisted that the demurrer to plaintiffs' petition should have been sustained. This contention

seems to be based upon the theory that there is no allegation of warranty in the petition, and further because there is nothing in the alleged warranty that implies any knowledge on Wedding's part of the location, condition, fertility, or preparation of the soil in which this corn was to be planted; and that there was no allegation that Wedding knew, or could have known, where, how, or whether this corn would be planted, cultivated, and raised, nor what the weather condition or season would be. It becomes necessary, therefore, to state in substance the pertinent parts of plaintiffs' allegations.

It is alleged that V. B. Duncan in May 1945 approached the defendant, Eugene Wedding, at the office and place of business of the defendant, Owensboro Grain Company, Inc., for the purpose of purchasing seed corn, and that Eugene Wedding was advised that Duncan desired to purchase the hybrid seed corn for the purpose of planting and raising a crop of suitable corn for feeding and other commercial purposes upon the farming lands of the plaintiff, W. P. Cooper.

It was further alleged that Eugene Wedding, individually, and as the agent and manager of the defendant, Owensboro Grain Company, Inc., represented and warranted to V. B. Duncan that Funk's G-515W, a white hybrid seed corn, which was sold by defendant, Owensboro Grain Company, Inc., was suitable for such purposes, both as to kind and productivity, and represented that the Funk's G-515W was a new companion hybrid seed to G-527W hybrid seed corn and was adapted to growing in Kentucky; that it had an exceptional yield and field performance plus excellent milling qualities; that it was one of the outstanding corn varieties for farmers of the Southern corn belt, which included Kentucky; and that the seed corn commonly yielded 60 to 75 bushels per acre and in some cases as high as 80, 90, or even 100 bushels per acre.

It is further alleged that Duncan was not familiar with or knew anything about Funk's G-515W hybrid white seed corn, and that relying upon the skill and judgment of the defendants, and upon their representations and warranty, Duncan purchased 15 bushels of Funk's G-515W white hybrid seed corn, for which he paid $9.75 per bushel.

It is further alleged that Duncan prepared 110 acres of the farming land and planted the seed; that the seed germinated and made a good stand of corn; that Duncan cultivated the corn in a husbandlike manner; that the year was favorable and seasonable for growing corn; that there was sufficient rain and sunshine to cause an abundant yield, but that when appellee, Duncan, harvested the crop he discovered same to be inferior in quality, mixed with yellow grains, and the ears not filled out; that the 110 acres yielded only approximately 3000 bushels of corn or a little less than 30 bushels per acre; and that if the corn had been of the kind and had produced as warranted and represented by the appellants, the same would have yielded at least 70 bushels per acre.

It was further alleged that on account of the inferior quality of the corn, it cost approximately 20 cents a bushel to have the same shucked instead of the customary 12 cents per bushel, and that the market price of white corn was $1.29 but that appellees were able only to obtain the sum of $1.15 per bushel.

Appellants insist that if appellees were entitled to recover they must do so on an actual warranty and that the most that can be said about the alleged representation by Wedding is that it was merely a statement of the history of the production of the corn made for sales and introductory purposes and certainly was not a warranty. However, the test of whether a given representation is a warranty or mere expression of opinion or judgment is set out in Mantle Lamp Co. v. Rucker, 202 Ky. 777, 261 S. W. 263, 264, in which it was said:

"The test of whether a given representation is a warranty, or a mere expression of opinion or judgment, has been said to be whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing as to which they may each be expected to have an opinion and exercise a judgment."

Obviously, the allegations of plaintiffs' petition satisfy this test.

Appellants further insist that they were entitled to a peremptory instruction. This contention goes to or rests upon three grounds urged herein. The first goes

to the agency of Wedding. It is insisted although the evidence tends to show that Wedding may have held himself out as agent of the Owensboro Grain Company, actually the agency was only circumstantially proven, and that the positive evidence of Wedding, Mr. O'Brien, President of the Owensboro Grain Company, Mr. and Mrs. Best, officials of the Columbiana Seed Company, and Mr. French, salesman for Columbiana, that Eugene Wedding was never agent of the Owensboro Grain Company in the handling of seed corn, outweighs and over-comes the evidence merely tending to show agency. We call attention to the proof.

Duncan testified that he had been dealing with Eugene Wedding and the Owensboro Grain Company for 10 or 12 years and that he had purchased from them many articles, including seed corn. He testified that he read the following advertisement in the Gleaner, a newspaper published in Henderson, Kentucky, which appeared in the May 1945 edition:

"For sale. Demand the best, proved by test, Funk's G hybrid seed corn. ·Large and medium flats.

> Owensboro Grain Company
> East Second Street,
> Henderson, Kentucky,
> E. Wedding, Agent,"

A clipping from the paper containing the above advertisement is filed with the record.

He stated that the bags of seed corn which he bought had tags on them which showed the corn had been shipped by the Columbiana Seed Company to the Owensboro Grain Company. These tags are filed as exhibits herein. He testified that the branch office of the Owensboro Grain Company is located at the end of Second Street in Henderson and has a sign on the building "Owensboro Grain Company" and that the Owensboro Grain Company installed and maintained in that office a telephone listed in the directory as "Owensboro Grain Company." The evidence further shows that the account was carried on the books of Columbiana Seed Company against the Owensboro Grain Company.

The President of the Owensboro Grain Company testified that his company never dealt in seed corn at

any time and said that Wedding was selling seed corn on his own and that his company received no commission on the sale of seed corn and had no knowledge thereof, but admitted on cross-examination that his company had maintained an office in Henderson for eight years and that Wedding was its agent until a fire in November, 1944; that they maintained on the top of the building in which the branch office was situated, a sign reading "Owensboro Grain Company;" and that on the outside was a big sign reading "Owensboro Grain Company Branch Office." He admitted the telephone was listed in the telephone book in the name of "Owensboro Grain Company." He further admitted that after the fire of 1944, Wedding continued to buy grain in the building under the Owensboro Grain Company sign and that the Owensboro Grain Company financed it; that during all of this time they maintained a bank account in Henderson in the name of Owensboro Grain Company; and that Wedding could check on that account to pay farmers for grain he purchased, and could do so on through the year 1945.

The Bests of the Columbiana Seed Company also admitted that the seed corn was shipped to the Owensboro Grain Company and their account carried in its name but that this was done merely for convenience in keeping books.

Under the above facts it is obvious there is no merit in the contention that the question of agency was not a question for the jury. The court by its instruction submitted the question of agency to the jury. Agency can be proved by showing the relationship of principal and agent, directly or indirectly, and by circumstances having a tendency to establish agency. The facts, circumstances, acts, and conducts of the party tending to prove agency, directly or indirectly, are admissible and should be submitted for the findings of a jury. Hayes v. Berea College, 281 Ky. 492, 136 S. W. 2d 563; and Rice & Hutchins' Cincinnati Co. v. J. W. Croghan & Co., 169 Ky. 450, 184 S. W. 374. That agency relation may be implied from conduct is settled by numerous decisions. Lacy v. Hodgkin, et al., 275 Ky. 722, 122 S. W. 2d 768; Monohan v. Grayson County Supply Co., 245 Ky. 781, 54 S. W. 2d 311; Carey-Reed Co. v. Hart, 245 Ky. 325,

53 S. W. 2d 689. Any evidence, direct or indirect, with the exception of admission by the agent out of the presence of and not ratified by the principal, having a tendency to establish the agency relation is admissible and it is a question for the jury to determine therefrom whether actual or apparent agency existed. Crump v. Sabath et al., 261 Ky. 652, 88 S. W. 2d 665.

There is no evidence that the Owensboro Grain Company made any effort to advise the public that Wedding, who had been its agent for many years, was no longer its agent. It was certainly proper to submit to the jury whether or not, under the circumstances above, Wedding was the agent of the Owensboro Grain Company.

The second goes to the sufficiency of proof relative to warranty. Duncan testified that in May he went to the Owensboro Grain Company for the purpose of obtaining Funk's 527W seed corn which he had ordered about a month before. At the time Wedding advised him that he had no Funk's 527W but that he would call Owensboro and see if they had it there. Duncan stated that the call was made and information obtained that the Owensboro Grain Company did not have this number of corn. Whereupon, Wedding called the Columbiana Seed Company, located at Eldred, Illinois, who supplied this particular number of corn, and Mrs. Best, wife of the owner of Columbiana Seed Company, informed him that Columbiana did not have the 527W but advised him to sell Duncan Funk's G-515W. Duncan stated that he informed Wedding he knew nothing about, and did not desire to experiment with a new variety of corn. Whereupon, Wedding said: "We will stand behind it." Duncan asked Wedding what he meant by "we" and Wedding replied: "Owensboro Grain Company." Duncan stated that he yet insisted that he didn't want to "fool" with a new variety of corn or with something that was not guaranteed. Duncan testified that Wedding then told him that the Owensboro Grain Company guaranteed it; that Mrs. Best advised that G-515W was a much better white corn, and that Wedding finally said: "Owensboro Grain Company is behind this, don't worry anything about it." The above, however, was denied by Wedding. The evidence above appears to us

to substantiate the allegations of the petition. A positive affirmation, accompanied by the assurance that the seller is "behind it," constitutes an express warranty. Duncan v. Dean, 205 Ky. 470, 266 S. W. 20, and Mosby v. Larue, 143 Ky. 433, 136 S. W. 887.

It is next insisted that even though there were a warranty as to the seed, the evidence as to the cause of the crop failure is mere speculation and is not sufficient to support a finding that the seed was the cause. Immediately upon ascertaining that something was wrong with the crop, Duncan notified Wedding and the Columbiana Seed Company. They inspected this field and the condition of the crop. Experts from the Department of Agriculture at Washington, D. C., from the Agricultural College at Lexington and from the Kentucky Seed Improvement Association, as well as hybrid seed corn experts from Indiana and Kentucky, were given an opportunity to ascertain, if possible, the reason for the crop failure. The reason for such failure is in controversy. Three theories for the failure were advanced by appellees: (1) That the seed failed to produce pollen, (2) That although pollen was produced it was not released, and (3) That if produced and released it was released at a time the tassel was not receptive to it.

The evidence for appellees was to the effect that this was average or better land; that climatic conditions were favorable; that the crop was tended in a husbandlike manner; that the corn had vigorous stalks with numerous well tasseled ears; and that it was free from the ravages of insects. It is contended that the sole cause could have only been the seed.

Appellants' evidence as introduced was to the effect that the land was below average; that it had been flooded, which prevented oxygen from getting to the plants; that the crop had been attacked by silk beetles, as the result of which the silks had been cut off and were thus not available to receive the pollen; that the seed corn in question was a new but thoroughly tested and highly satisfactory seed; and that in the adjoining counties successful crops had been raised from the Funk's G-515W seed which came from the same bin as that of appellees.

In attempting to establish any one of the three theo-

ries above, it is obvious that the question is not one amenable to direct proof, and one which, consequently, might result in confusion and uncertainty. It is insisted by appellants that to allow damages based upon such evidence would be to permit the jury to enter the realm of speculation. Courts generally have expressed an inveterate dislike of conclusions, or the acceptance or rejection of theories which must depend on speculation, blind impulse, or arbitrary choice. While the question here presented is surrounded with difficulty, in order to arrive at a proper conclusion in the matter we must again look at the proof.

Appellees introduced the testimony of Frank Street, who apparently is highly conversant with the production of hybrid seed corn. He testified that the reason the corn failed to produce was its failure to pollinate. He based this on the fact that while the receptive silks were out 6 to 8 inches long to receive the pollen, they did not receive it because approximately ½ of the blooms or pollen sacks in the tassel had not opened; approximately 25% had fallen out and only partially opened; and that only 25% had discharged the pollen from the tassel. Ears of corn were shown as an exhibit to the jury. It was pointed out that the grains were spotted. Mr. Street then went into a discourse on the subject, showing how particular inbreds are developed, all of which evidenced that he knew much about hybrid seed corn and was well qualified as an expert. He made the definite and positive assertion that the trouble with Duncan's crop was in the seed.

A Mr. Meacham, also an expert on the production of hybrid seed corn, stated that it was his opinion that the Duncan crop failed to get pollen.

A Mr. Poore, also a producer of hybrid seed corn, testified that he looked at this field of corn and that the trouble he found was lack of pollination.

Mr. H. R. Jackson, County Agent of the Henderson County Farm Bureau, and also a producer of hybrid corn, visited this field of corn and testified that he found an apparently good looking field of corn, excellent looking ears from a distance but very poorly set to kernels; that it was well silked and had tassels; and that he exam-

ined the tassels and found that the anthers which bear the pollen grains had not emerged from bloom to spread the pollen.

A number of witnesses introduced by appellants, among whom were some experts, would go no further than express the conclusion that they didn't know what caused the trouble. Counsel for appellants states in his brief: "Nobody knew in 1945 what happened to Duncan's crop. Every expert who saw it could simply guess at it. Nobody could say positively that it was due to defective seed."

In addition to the testimony of these experts the evidence shows that the portion of appellees' corn field bordering on adjoining fields of corn was better than that near the center, indicating that the pollen from these neighboring fields was blown over on to and pollinated the corn nearest to it. The exhibits as presented before the jury, and brought here, definitely show a sparse or scattered set of kernels on the cob. Obviously, something was the cause. It would hardly be expected to have sturdy stalks, blades with ears formed on the stalks, abundant silks on the ear and yet no grain on the cob. We could not take the position of appellants here with entire consistency. It appears to us that the theory of appellees is quite compatible with the facts as shown and the opinions of experts. At any rate, the facts are amply sufficient, although in a measure contradicted, to take the cause to the jury.

Appellants next complain of Instructions 1 and 2 given by the court and the refusal to give Instructions A and B offered by appellants. Although it will somewhat burden this opinion, we deem it best to set out Instruction 1 in its entirety:

"If you shall believe from the evidence in this case that the defendant, Eugene Wedding, sold to the plaintiff, V. B. Duncan, a quantity of G-515W white hybrid seed corn to be used as seed in planting plaintiffs' corn crop for the year 1945, under the representation and warranty at that time made to the said Duncan by the said Wedding that said seed corn was suitable for such purpose both as to kind and productivity, and that it was a new companion hybrid seed to G-527W hybrid seed

corn and adapted to growing in Kentucky, and had an excellent stalk quality and soft kernel that millers like, and that it had an exceptional yield and field performance plus excellent milling qualities, and was one of the outstanding white corn varieties for farmers in this corn belt and commonly yielded 60 to 75 bushels per acre and in some cases the yield was 80, 90 or even 100 bushels per acre, and that the ears were large and shelled a high per-centage of fine quality grain, the kind that brings a premium from many millers: And if you shall further believe from the evidence that the said Duncan believed and relied upon said warranties and bought and planted said seed in reliance thereon, and shall further so believe that said seed was of an inferior quality in that it did not substantially fulfill said warranties, if any were made, and that on account of such inferior quality, and solely on such account, the plaintiffs' crop of corn was of low yield and inferior quality, you should then find your verdict for the plaintiffs, as against the defendant, Wedding.

"But unless you believe as above required, or if you shall believe from the evidence that said crop was of inferior quality or low yield because of any reason other than defective or inferior seed, or if the said Duncan bought said seed in reliance upon the representation of any person other than the said Wedding, then the law is for the defendants, and you should so find."

It will be recalled that the petition alleged a specific warranty and this allegation was supported by the proof. It will be noted by the above instruction that the court submitted the questions of, first, whether or not a warranty had been made, and as to Duncan's belief and reliance thereon, and second, whether or not the seed was of an inferior quality.

In order to find for plaintiffs below, the jury had to believe that a warranty was given, believed and relied on, and that the loss resulted solely from inferior or defective seed. The case of Duncan v. Dean, 205 Ky. 470, 266 S. W. 20, cited by appellants, does not support them and is not an authority for their position. In fact, it is rather an authority for the position of appellees.

Complaint is also made of Instruction No. 2 which reads:

"If you find for the plaintiffs under the first instruction you should award to them such a sum in damages as will, in your opinion, fairly and reasonably compensate them for the difference, if any, in the fair market value of the product of the seed mentioned in the evidence and planted by the plaintiffs and the fair market value of the product that would reasonably have resulted under the same weather conditions, method of cultivation and other conditions of soil and climate if said seed had corresponded to the warranties made, if any were made, not to exceed, however, the sum of $6468.00, the amount claimed in the petition.

"If you find for the defendants you will say so and no more."

It is insisted that the above instruction approved a false measure of damages and that the damages should have been limited to the cost of the seed and labor. The above followed instructions heretofore approved by this court in Hobdy & Read v. Siddens, 198 Ky. 195, 248 S. W. 505, and cases cited therein, as to the measure of damages, which is the difference between the value of the crop produced and the value of the crop which would have been produced had the seeds been as warranted.

Instruction A offered by appellant is merely the converse of Instruction 1.

It is contended that refusal of offered Instruction B was error, apparently on the theory that the language of Instruction 1 as to reliance did not adequately cover the situation of sub-agency. We find no merit in this. We think the instructions as given by the court to be adequate and proper.

The next question presented by appellants is that counsel for appellees was guilty of improper argument, which was so inflammatory as to engender prejudice. It is insisted that the court should have sustained appellants' motion to discharge the jury and continue the case. Attorney for appellees in closing argument said: "If you return a verdict against Wedding and this corporation, both Wedding and Owensboro Grain Company can go over to Illinois and recover it back from Best." Objection was made and the court admonished the jury "not to consider that argument as to what these peo-

ples rights will be." By affidavit in the record the attorney arguing the case says he did say in his address to the jury that as a matter of law "If the jury returned a verdict for plaintiffs against the defendants that the defendants had the right to maintain an action against Best doing business as the Columbiana Seed Company, to recover their loss if they should see fit to pursue such a course, or words of similar import, * * *." On the face of it this might appear to be all that counsel for appellants say, but upon more careful consideration we cannot escape the fact that appellants herein first introduced into the trial the original suit of appellees against Wedding and the Columbiana Seed Company, which was filed before the present action was instituted and which was dismissed after motion to quash summons was sustained. No doubt, this was done for the purpose of trying to show that appellees believed Wedding to be the agent of Columbiana. In addition Mr. and Mrs. Best of the Columbiana Seed Company, one of their salesmen, and an expert in charge of general supervision of Southern territory for Columbiana Seed Company, were present and testified at the trial. It certainly could not have been error to have called attention to the fact that possibly the Bests were interested witnesses. Under the authority of Hobdy & Read v. Siddens, above, the Columbiana Seed Company could have been brought into the action by cross-petition on part of the Owensboro Grain Company. In view of the above facts, coupled with the admonition of the court, even though the statement of counsel for appellees may have been improper, it certainly cannot be prejudicial. Especially is this true in view of the further fact that the jury found the sum of $3,956.60 when appellees prayed in their petition for the sum of $6,468.00.

Lastly, it is contended that the verdict is excessive. Numerous witnesses testified concerning the scattered grains on the ears and that if the ears had been well filled Duncan would have harvested from 60 to 65 bushels per acre. Under this proof we cannot say that the verdict is excessive.

Wherefore, we conclude that no reversible error has been committed and the judgment should be and is affirmed.

Chief Justice Sims and Judge Thomas dissenting on the ground that a verdict based on above facts is too speculative.