**GENERAL SUPPLY AND EQUIPMENT COMPANY, INC., Appellant,**

**v.**

**Harry S. PHILLIPS, Appellee.**

**No. 650.**

Court of Civil Appeals of Texas, Tyler.

Dec. 28, 1972.

Rehearing Denied Feb. 22, 1973.

breach of warranty covering greenhouse panels. V.T.C.A., Bus. & C. § 2.715(b).

Ardon E. Moore, Jr., Tyler, for appellant.

Charles H. Clark, Tyler, for appellee.

MOORE, Justice.

Appellee, Harry S. Phillips, brought this suit for damages against appellant, General Supply and Equipment Company, Inc., for breach of express warranty; breach of implied warranty of fitness for a particular purpose; and breach of implied warranty of merchantability relating to certain plastic paneling, called "P.V.C. paneling," sold by General Supply and Equipment Company, Inc., to Harry S. Phillips for roofing material to cover four greenhouses. Appellee alleged that the paneling was warranted to last for a period of five to seven years; that within three years after sale the paneling darkened to such an extent that sunlight in sufficient quantities could not enter into the greenhouses, resulting in the loss of plants as well as the destruction of Phillip's greenhouse business. Appellant denied the allegations generally and alleged that if any warranty existed the warranty was excluded or modified either expressly or by the course of dealing between the parties. Trial was before a jury. In response to the special issues, the jury found that an express warranty, an implied warranty of fitness for a particular purpose, and an implied warranty of merchantability were made by appellant, and that there was a breach of such warranties proximately resulting in damages to appellee. The trial court rendered judgment on the verdict awarding appellee damages in the sum of $176,067.53. Appellant duly perfected this appeal.

The jury, in response to the special issues, made the following findings: (1) that General Supply and Equipment Co. made an affirmation of fact and promise to plaintiff relating to the goods; (2) that such became a part of the basis of the agreement; (3) that plaintiff relied upon representations of defendant in making the purchase; (4) that the goods sold to plain-

tiff failed to comply with affirmations and promises made by defendant; (5) that because of such failure plaintiff was injured; (6) such failure was proximate cause of the injury suffered by plaintiff; (7) that the goods sold failed to meet certain enumerated requirements as to merchantability; (8) that plaintiff was financially injured because of such failure; (9) that such failure was the proximate cause of financial injury suffered by plaintiff; (10) that plaintiff purchased the goods to be used for purpose of covering his greenhouse; (11) that defendant knew or should have known of the particular purpose for which plaintiff purchased the goods; (12) that defendant knew or should have known plaintiff was relying on defendant's skill or judgment to furnish suitable goods; (13) that plaintiff purchased the goods in reliance on defendant's judgment or skill to furnish suitable goods; (14) that such goods were not suitable for their intended use or purpose; (15) that because of unsuitability of goods plaintiff suffered financial injury; (16) that the unsuitability of goods was proximate cause of plaintiff's injury; (17) that the statement and representations were not merely affirmations of the value of the goods, or statements of opinion or commendation of the goods; (18) that the cash market value of the greenhouses immediately prior to the sale of said greenhouses, had the P.V.C. paneling been fit for its intended use was $85,000.00; (19) that the cash market value of the greenhouses at the time of the sale of the said greenhouses as they existed at the time of their sale was $12,678.00. Special Issue No. 20, together with the jury's answers was as follows: What sum of money, if paid in cash, would fairly and reasonably compensate plaintiff for his financial injury resulting to him from his purchase of the paneling. (a) installation of P.V.C. panels, $16,305; (b) replacement of P.V.C. panels, $10,385.00; and (c) actual business loss, including loss of profits, $145,322.00.

Appellant, General Supply and Equipment Company, Inc., was engaged in the business of selling greenhouse covering products, known as P.V.C. panels or polyvinyl-chloride. Appellee, Harry S. Phillips, owned and operated four large greenhouses in Smith County, Texas, and was engaged in the business of growing and selling plants, but was principally in the business of growing "mums" (chrysanthemum). The appellant mailed out certain advertising material to greenhouse owners to promote sales of its P.V.C. paneling product. The advertising material invited inquiries concerning P.V.C. paneling. Phillips received some of the material containing the following statements:

> "How are you planning to cover your plants this year . . . with single season polyethylene . . . two or three season P.V.C. soft ag film . . . *or five to seven year rigid corrugated PVC panels?"* (Emphasis supplied.)

\* \* \* \* \* \*

> "Finest Quality—Import PVC Rigid Plastic Panels from World-Famous Mitsubishi, 1¼" and 2½" Corrugations, 26", 28" wide x 8', 10', 12' long. *Tests show no deteriaration (sic) in 5 years of normal use."* (Emphasis supplied.)

\* \* \* \* \* \*

> "Because of the tremendous increase in the use of P.V.C. Panels and Film, and the uncertainty of shipping schedules in the Far East, we must know your requirements for summer and fall construction now to guarantee delivery. From Japan . . . a land where floral and agricultural growing skills are legendary . . . comes a modern material that meets all requirements of greenhouse construction . . . perfectly. Light in weight, easy to handle, easy to work. It's tough and virtually indestructible; provides maximum protection. And its light stability is exceptional. *It won't turn black or discolor . . . even after years of exposure."* (Emphasis supplied.)

Another advertisement from the appellant stated its P.V.C. paneling would "not burn, rot, rust or mildew."

After numerous conversations, a representative of appellant traveled to appellee's place of business offering construction and operation suggestions and thereafter appellee purchased the P.V.C. paneling. It is undisputed that the paneling darkened and turned black within a period of approximately two years after it was installed on the greenhouses. As a result the 'mums failed to grow and the blooms failed to mature, thereby causing appellee substantial damages.

The primary question presented by appellant's points one through seven is whether appellant made any affirmations of fact or promises to appellee relating to the paneling amounting to an express warranty or whether the representations were merely appellant's opinion or commendation of the goods and the value thereof. In this connection appellant urges that there is no evidence to support the jury's finding of an express warranty (Special Issue No. 1) and that the jury's finding that the statements made by appellant were not mere statements of opinion (Special Issue No. 17) is against the overwhelming weight and preponderance of the evidence. The points appear to be without merit and are overruled.

■ Sec. 2.313 of the Texas Business and Commerce Code (U.C.C.), V.A.T.S., provides that " * * * any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain * * * " is an express warranty. To recover money damages under the theory of express warranty in Texas, one must prove: (1) an affirmation of fact or promise made by the seller to the buyer relating to the goods; (2) such affirmation of fact or promise became a part of the basis of the bargain; (3) that the injured party, in making the purchase, relied on the representations, affirmations of fact or promises; (4) that the goods sold by the seller failed to comply with the promises or affirmations of fact made by the seller; (5) that the buyer, because of such failure, was financially injured; and (6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer. See Sec. 2.313, Texas Business and Commerce Code and the Uniform Commercial Code Comment following Sec. 2.313. Also see 17 A.L.R.3rd 1010.

■ The test for whether a given representation is a "warranty" or a mere expression of opinion is: did the seller assume to assert a fact of which the buyer is ignorant, or did he merely express a judgment about a thing as to which they may each be expected to have an opinion. Wedding v. Duncan, 310 Ky. 374, 220 S. W.2d 564 (1969).

As we view the record, the appellant made more than one affirmation of fact to appellee relating to the quality of the panels: (1) that "tests show no deterioration in 5 years of normal use," (2) "It won't turn black or discolor . . . even after years of exposure," and (3) it "will not burn, rot, rust or mildew." The record shows that appellee had no knowledge of any of these facts. It is without dispute that the panels commenced turning dark after about two years' use causing a diminution of light in the greenhouses.

■■ Whether the retailer or his agent affirmed a fact or made a promise concerning the product amounting to a warranty is usually a question of fact for the jury. Lindroth v. Walgreen Co., 407 Ill. 121, 94 N.E.2d 847 (1950); Miller v. Economy Hog and Cattle Powder Co., 228 Iowa 626, 293 N.W. 4 (1940); Van Antwerp-Aldridge Co. v. Schwarz, 263 Ala. 207, 82 So.2d 209 (1955); Compton v. M. O'Neil Co., 101 Ohio App. 478, 139 N.E.2d 635 (1955). When viewed in a light most favorable to the verdict, we think the jury's answer to Special Issue No. 1 is amply supported by the evidence. After a careful review of all the evidence we find that we

918

are unable to agree with appellant's contention that the statements and representations of appellant amounted to nothing more than a mere expression of opinion. Consequently we cannot agree with appellant's contention that Special Issue No. 17 is against the overwhelming weight and preponderance of the evidence.

By points eight through fourteen appellant asserts that there is no evidence to support the jury's finding on Special Issues Nos. 2 and 3, wherein the jury found that the affirmation of fact was the basis of the bargain and that appellee relied upon same.

The record shows that prior to the purchase of the paneling, appellee asked appellant how long he could expect to get service out of the paneling and was told he could depend on it for five or six years. Appellee also testified he relied upon the statements contained in the advertisements sent him by appellant. He further testified that but for such representations he would not have purchased the paneling. When viewed in the proper light we think the record contains at least some evidence of probative force to support the findings that the representations were made the basis of the bargain and that appellee relied thereon. Appellant's points eight through fourteen are overruled.

By points 27 and 34 appellant challenged the judgment on the ground that there is no evidence to support the jury's finding that appellant's failure to comply with the express warranty proximately caused appellee financial injury as found by the jury in response to Special Issue No. 6.

Appellee testified that two years after the roof had been installed, the plants began to "stretch" or reach up for more light. The stems became thin. The leaves were too far apart and the blooms were small. He attributed this condition to a lack of light transmission through the panels. He testified that this was caused by the panels becoming clouded and dark. Ben Browning, the County Agent of Smith County, testified he observed the panels and found them to be turning dark. He testified that light was a critical factor in the growing of flowers, and there was a shortage of light coming through the roof and as a result the plants were not getting enough light. Appellee testified that due to the lack of light the 'mums failed to mature properly; that those that reached the flower stage were small in size which adversely affected the sale's price and other plants failed to bloom and became worthless.

Ordinarily, the issue of proximate cause is a question of fact for the determination of the jury. 40 Tex.Jur.2d, sec. 165, p. 708.

The issue of proximate cause may be proved by circumstantial evidence. Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352 (1951); Nash v. Roden, 415 S.W.2d 251 (Tex.Civ.App., Austin, 1967, ref., n. r. e.). When viewed in a light most favorable to the verdict, we are convinced that there was ample evidence raising the issue of proximate cause.

All other points brought forward by appellant challenging the judgment fixing liability on appellant based upon the findings of a breach of an express warranty have been considered and found to be without merit and are overruled. In view of the foregoing conclusion, it will not be necessary to discuss other points challenging the judgment decreeing liability for breach of an implied warranty. Rule 434, Texas Rules of Civil Procedure. Suffice it to say, we have reviewed the record and have concluded that there is adequate evidence to sustain the jury's verdict finding that appellee's damage was proximately caused by a breach of both an express warranty and an implied warranty of fitness.

By the 39th point appellant complains of the submission of Special Issue No. 18 on the ground that the issue did not constitute a proper measure of damages. He also

complains of the submission of the issue and the jury's finding because he contends that a diminution in market value of the greenhouses was not in the contemplation of the parties at the time of the sale of the goods.

The question with which we are here confronted is what damages are recoverable by appellee for appellant's breach of warranty.

The applicable statutes are Sec. 2.714(b), (c) and 2.715 of the Uniform Commercial Code, Vernon's Annotated Texas Statutes.

Sec. 2.714 provides in part:

"(b) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

"(c) In a proper case any incidental and consequential damages under the next section may also be recovered."

Sec. 2.715, Buyer's Incidental and Consequential Damages

"(a) Incidental damages resulting from the seller's breach include * * * any other reasonable expense incident to the delay or other breach.

"(b) Consequential damages resulting from the seller's breach include

"(1) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

"(2) injury to person or property proximately resulting from any breach of warranty."

In the instant case the ordinary measure of damages for breach of warran-ty stated in 2.714(b) is not applicable because of special circumstances showing proximate damages of a different amount. The proximate damages in this case consist of incidental and consequential damages as provided by Sec. 2.715.

Subsection (a) of Sec. 2.715, supra, is intended to provide reimbursement for the buyer who incurs reasonable expenses incident to the breach of warranty.

By the submission of Special Issues Nos. 18 and 19, the trial court seems to have assumed that incidental damages included a diminution in market value of the greenhouses. Under the record before us, we do not believe this constituted a proper measure of damages.

When appellee decided to put a new roof on his greenhouses in the fall of 1966, he took off the old roofing on greenhouse No. 2 and replaced it with the P.V.C. paneling purchased from appellant. In the spring of 1967 he replaced the roof on house No. 4. The roofing on houses Nos. 1 and 3 was replaced with P.V.C. panels purchased from appellant sometime in the fall of 1967 or early spring of 1968. After discovering the P.V.C. paneling to be defective, appellee put a new roof on houses Nos. 2 and 4 in October, 1969. Appellee did not replace the defective P.V.C. paneling on houses Nos. 1 and 3, prior to the time he sold all four greenhouses on July 24, 1970.

It is without dispute that the roofs on the two greenhouses were replaced without structural damages to the greenhouses.

While the diminution in market value is evidence of damages, it is generally understood that the measure of damages is the cost of repair. Bowman Steel Corp. v. Lumbermens Mutual Casualty Co., 364 F.2d 246 (3rd Cir., 1966) Note 8; Winandy Greenhouse Construction, Inc. v. Graham Wholesale Floral, Inc., 456 S.W.2d 470 (Tex.Civ.App., Ft. Worth, 1970); 10 Tex.Jur.2d, p. 65, Building Contracts, sec.

57. We sustain appellant's contention that the diminution in cash market value in this instance is not the proper measure of damages, especially since the evidence shows that the defective paneling was replaced without material damage to the structure. It occurs to us that the incidental damages involved here would be the reasonable cost of replacing the defective paneling with equal quality as that represented by appellant, less the salvage value, if any, of the defective paneling. Therefore, we think the trial court erred in submitting Special Issue No. 18 and in allowing a recovery based upon the jury finding on Special Issues Nos. 18 and 19.

By the forty-second and forty-third points appellant urges that there is no evidence to support the jury's answer to Special Issue No. 20(c) wherein the jury found that appellee's actual business loss, *including lost profits,* was $145,322.00. (Emphasis supplied.) In this connection appellant urges that the testimony as to lost profits was so conjectural and speculative that it amounted to no evidence of probative force establishing damages for lost profits.

Section 2.715(b) provides that the buyer is also entitled to consequential damages resulting from the seller's breach of warranty. This includes loss of profits. Damages for lost profits, however, must not be so indefinite as to be conjectural. 51 Tex.Jur.2d, Sales, sec. 330, Anderson, Uniform Commercial Code, Sec. 2–715:4. Where the buyer can show "a reasonably definite pattern of sales to customers which they would have made but the buyer did not make them because his customers were dissatisfied with the buyer's product because of a defect traceable to the seller's breach of warranty, the buyer is entitled to recover for loss of profits from the seller in his action for breach of warranty." Anderson, Uniform Commercial Code, Second Edition, Sec. 2–715:26, pp. 478, 479; Lewis v. Mobil Oil Corp., 438 F.2d 500 (8th Cir., 1971).

In a Committee Comment to Sec. 2.715 of our Uniform Commercial Code we find:

"4. The burden of proving the extent of loss incurred by way of consequential damage is on the buyer, but the section on liberal administration of remedies rejects any doctrine of certainty which requires almost mathematical precision in the proof of loss. Loss may be determined in any manner which is reasonable under the circumstances."

The loss of profits in this instance rests solely upon appellee's assumption that if the four greenhouses were fully planted in chrysanthemums, and if they produced flowers as expected, he would have expected to make a profit of $30,240.00 a year. His estimate was based solely upon his own projection that he could grow a crop of 'mums every fourteen weeks and that he would make a net profit of five cents for each 'mum sold. As we view the record there is no evidence whatever to support appellee's estimate as to net profits. His testimony clearly shows that he had never made a profit out of 'mums and that his projections were merely what he thought he should make under the most favorable conditions. The record shows that in addition to growing 'mums, appellee also raised other plants in the greenhouses. While he admits he kept no separate set of records on the profits or losses from the sale of the 'mums, his sole and only claim for loss of profits is based upon the losses he contends he sustained on the 'mums. He does not contend he sustained losses on any of the other plants. According to the testimony of his accountant, the greenhouse business for the fiscal year ending in June, 1967, suffered a loss of $6,882.00; for the year ending in 1968 the business had a profit of $203.41; for the year ending in 1969, the business sustained a loss of $23,817.51 and for the year ending in June, 1970, the business sustained a loss of $53,537.32. The greenhouses were sold on July 24, 1970.

Appellee seeks to uphold the jury's finding of lost profits by arguing that the evidence shows a loss of profit in the amount of $30,240.00 per year. He therefore says that since the panels were warranted for six years the proof was more than ample to sustain the jury's finding of $145,322.00. We do not agree.

The generally accepted rule is that where it is shown that a loss of profit is a natural and probable consequence of the act or omission complained of and that amount is shown with sufficient certainty, there may be a recovery therefor; but anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations or a change of business, or where there is no evidence from which they may be intelligently estimated. Evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation; it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097 (1938); Riddle v. Lanier, 136 Tex. 130, 145 S.W.2d 1094 (Tex.Com.App., 1941, op. adopted).

We are of the opinion that the proof offered by appellee fails to constitute any evidence of probative force upon which his loss could be intelligently estimated. The only evidence of loss of profits is to be found in appellee's testimony. Nowhere in his testimony did he testify as to the loss in market value of any of the numerous crops of 'mums. The evidence on which the jury based its verdict is that under favorable circumstances he could have raised approximately 600,000 'mums per annum and could have realized a net profit of five cents on each plant. In our opinion this testimony was purely conjectural and speculative. Moreover the evidence shows he sold a considerable amount of 'mums during each of the years in question until the paneling commenced turning dark.

While we believe the evidence was sufficient to show a loss of at least some profits, we think the case was tried and submitted on the wrong theory of damages. As we view the record, the proper measure of damages for lost profits in this instance would be the difference between the reasonable market value of each crop of 'mums as actually raised and sold and the reasonable market value of the crop which would have been produced and sold had the P.V.C. paneling been as warranted. Hoopes v. East, 19 Tex.Civ.App. 531, 48 S.W. 764 (1898, err. ref.); Buckbee v. P. Hohenadel, Jr. Co., 224 F. 14 (7th Cir.); 17 Tex.Jur.2d, Crops, secs. 63, 64; Wedding v. Duncan, supra. This measure of damages would include lost profits and would also allow for a fluctuation in the market price.

The remaining damage findings to be found in Special Issue 20(a) and (b) do not in our opinion constitute a basis for sustaining a judgment for appellee. In these findings, the jury found that the cost of installing the defective P.V.C. paneling amounted to $16,305.00 and that the cost of replacing the defective paneling on two of the greenhouses amounted to $10,385.00. The judgment awarded appellee a recovery for both amounts. This constitutes an erroneous measure of damage for the reason that it operates as a windfall in favor of appellee and allows a double recovery. 17 Tex.Jur.2d, sec. 291. Under this measure of damages appellee would be fully reimbursed for the defective paneling and would be paid for a new roof on two of the greenhouses free of any cost. As stated above, we think the proper measure of damages would be the cost of replacing the defective panels on all four greenhouses.

For the reasons stated we have concluded the judgment must be reversed.

Rule 434, Texas Rules of Civil Procedure, provides as follows:

"When the judgment or decree of the court below shall be reversed, the court shall proceed to render such judgment or decree as the court below should have rendered, except when it is necessary that some matter of fact be ascertained or the damage to be assessed or the matter to be decreed is uncertain, in either of which cases the cause shall be remanded for a new trial."

As we view the record, there is no way that judgment can be rendered because the incidental damages, i. e., the reasonable cost of replacing the defective paneling on all four greenhouses is a matter which has never been ascertained by the jury. Under the issues submitted the jury found the replacement cost on only two of the greenhouses. Thus the incidental damages are uncertain. With respect to the consequential damages, i. e., loss of profits, we are of the opinion that the cause was tried on the wrong theory. We think the evidence should have been developed showing the market value of each 'mum crop actually produced and sold, as well as evidence showing the market value of each of the crops which would have been produced and sold if the warranty had been complied with.

Under the record before us, we are of the opinion that the ends of justice would be better served by reversing and remanding for a new trial rather than reversing and rendering.

Reversed and remanded.

McKAY, Justice (concurring).

In my opinion appellant did not make a proper objection to Special Issue No. 18 to preserve a point on appeal, nor did appellant prove a measure of damages different from that which was applied and submitted by the trial court, thereby waiving the submission of another measure of damages.

Otherwise, I concur in the majority opinion.