[Civ. No. 22286.   Second Dist., Div. Three.   Jan. 23, 1958.]

LULER MASTERSON, Appellant, v. EDWARD GARDNER WARD, Respondent.

John D. Gray and George O. West for Appellant.

Bauder, Gilbert, Thompson & Kelly and W. I. Gilbert, Jr., for Respondent.

WOOD (Parker), J.—Action for damages for personal injuries sustained by plaintiff, a pedestrian, who was struck by an automobile while she was crossing a highway in Los Angeles County. Judgment upon a verdict was in favor of defendant. Plaintiff appeals from the judgment.

Appellant contends that the court erred in refusing to give certain instructions with reference to the presumption of due care and the doctrine of last clear chance.

The accident occurred on Rosecrans Boulevard about 400 feet west of the intersection of Rosecrans Boulevard and Cerise Street. Rosecrans Boulevard extends in an easterly and westerly direction and is straight and level for a considerable distance east and west of the place of the accident. The paved portion of Rosecrans is 30 feet wide and is divided by single white lines into three 10-foot lanes. On each side of the pavement there is a dirt shoulder 8 feet wide. There are no sidewalks, curbs, or street lights on Rosecrans.

Plaintiff Mrs. Masterson resided in a trailer park which is on the north side of Rosecrans and extends west from Cerise Street for a distance of approximately 400 feet. Plaintiff's trailer home was near the west end of the trailer park. A driveway into the park, from Rosecrans, is about 30 feet from the west end of the park.

On the south side of Rosecrans and approximately opposite the center of the trailer park there is a grocery market. Next to and west of the market there is a parking lot; and next to

and west of the parking lot there is a plant nursery (opposite the trailer park driveway). A marked crosswalk is on Rosecrans at the west side of the intersection of Rosecrans Boulevard and Cerise Street.

On September 18, 1953, about 8 p. m., the plaintiff, who was 59 years of age, and her grandson Gerald Schuler, about 11 years of age, and Ellen Taylor, about 4 years of age, went from plaintiff's home to the market—walking across Rosecrans. When they were returning home and crossing Rosecrans at a place near the trailer park driveway, the plaintiff and Ellen were struck by an automobile which was driven, in a westerly direction, by the defendant Ward, who was 20 years of age. Gerald was not injured. (In a separate action, which was consolidated for trial with the present action, Ellen obtained judgment against Ward.)

Plaintiff Mrs. Masterson testified that when she left home there were "lights from the trailer park"; she and the children were in the market about 20 minutes; they left the market and walked along the south side of Rosecrans until they came to the nursery; she stopped and looked across Rosecrans; at that time they were not quite opposite the trailer park driveway; she held Ellen's left hand, and Gerald held plaintiff's left arm; plaintiff was carrying a can of corn and two packages of cigarettes under her left arm; she looked up and down Rosecrans and saw automobile lights coming from both directions; the lights were far away and she thought she could make it across Rosecrans; she walked to the white line "in the center"; she did not look to the right "and" to the left while she was walking to the line; she did not run as she started to cross the street; Gerald quit holding her arm just before she got to the white line; she did not know whether he went ahead of her or behind her; when she arrived at the white line she stopped and looked to her right and to her left and saw automobile lights again; the lights she saw when she turned to her right (east) might have been a little closer than they had been before; she did not notice whether the lights she saw when she turned to her left (west) were closer than they had been before; then she started on across the street and that is the last she remembered; she did not remember that the car hit her, or that she was lying anywhere, or that the ambulance came; the first thing she remembered after the accident was that she saw flowers in a room; she had not drunk intoxicating liquor.

Mr. Bowen, called as a witness by plaintiff, testified that he

resided in the west end of the trailer park; on the night of September 18, 1953, a few seconds before the accident, while he was in his trailer, he saw plaintiff and the two children walking west on the south side of Rosecrans at a place about 15 feet east of the trailer park driveway; he did not continue to watch them; about 8:45 p. m. he heard a long screech of brakes, and he "saw something strike something" near the center of the driveway, and he heard a thud; he saw a car going west, which was traveling 60 to 75 miles an hour; he did not see any lights on the car; he ran to the street and saw two persons run across the street to a vacant lot west of the nursery; plaintiff was lying on the "west lane" of Rosecrans about 50 feet west of the center of the driveway; the car had stopped 35 feet west of the center of the driveway; he did not see anyone in the car; the "right wheel" of the car was partly on the pavement and the "left wheel" was off the pavement; there were two solid skid marks in the north lane of Rosecrans, which marks "arced" toward the shoulder of the street; the marks extended about 95 feet east and 35 feet west of the center of the driveway. He testified further that there was a floodlight in the west end of the trailer park which lighted the driveway and part of the street.

Mr. Masterson, husband of plaintiff, testified that on the night of the accident, while he was in his trailer, he heard the scream of brakes and a thump; he went to the street; he saw his wife lying in the street and saw Mr. Bowen standing by her and directing traffic; he saw an automobile about 20 feet west of the center of the driveway; his wife was about 18 feet west of the automobile; half of the automobile was on the shoulder of the street and the other half was on the pavement; he saw no lights on the automobile; the driver was not in the automobile; two skid marks in the north lane of Rosecrans extended easterly from the center of the driveway about 110 feet; at the center of the driveway the skid marks turned to the right; the next morning he found a battered can of corn and two packages of cigarettes in the street just west of the driveway.

Officer Wallace, called as a witness by plaintiffs Taylor, testified that when he arrived at the scene at 8:58 p. m. plaintiff was lying in the north lane of Rosecrans; automobile skid marks 87 feet long were in the north lane; the marks commenced at a point 364 feet west of Cerise Street and extended westerly from that point. On cross-examination by defendant,

he testified further that he did not talk to plaintiff; she was conscious; her breath had a strong alcoholic odor.

Mr. Bashara, called as a witness by plaintiff, testified that skid marks in the north lane were about 145 feet long and they turned to the right at the driveway.

Dr. Cassady, a physician called as a witness by plaintiff, testified that when he examined plaintiff on September 20, 1953, she was irrational and semiconscious; she had a severe (brain) concussion, a compound comminuted fracture of the right leg, and chest injuries. He was asked a hypothetical question based upon the testimony of plaintiff wherein she said she did not remember what occurred after she left the white line and started on across the street. As a part of that question he was asked whether there was a causal connection between such failure to remember and the injuries to her head. He replied that there was basis for that in view of the fact she had such a severe concussion; and that amnesia is associated with concussion, "that is, a part of it, the results of concussion, to have no recollection of the immediate events following the blow, the injury."

Dr. Townsend, a physician called as a witness by plaintiff, testified that he examined plaintiff on December 29, 1953; she had a concussion and other injuries. (His testimony as to other injuries was in substance the same as the testimony of Dr. Cassady.)

Defendant testified that he was driving west on Rosecrans, in the north lane; he was alone; at the intersection of Rosecrans and Cerise he was traveling 30 to 35 miles an hour and, at the intersection, he passed an automobile that was turning left to go south on Cerise; after crossing the intersection, he was traveling about two feet south of the north edge of the pavement; he did not increase his speed; the headlights of his automobile lighted the highway for more than 100 feet; he saw three pedestrians who were about to enter the north lane; they were about three or four car lengths from him when he first saw them; they were in single file and were running; the little girl and plaintiff were holding hands; the little girl, who was in front, was about 10 feet from the north edge of the pavement; he applied his brakes and continued to watch the pedestrians; when he was 5 to 10 feet from them, he swerved to the right; the left front of his automobile struck plaintiff and the little girl when they were approximately 5 feet south of the north edge of the pavement; after striking them, his automobile skidded about one and one-half car

lengths and stopped with the left rear wheel on the pavement; his automobile skidded approximately 60 feet before it struck them, and at the time it struck them it was traveling 20 to 25 miles an hour; immediately after the accident he ran across the street to the market and called the police; then he returned to the scene of the accident; when the officers arrived he identified himself as the driver of the automobile.

Gerald Schuler, called as a witness by defendant, testified that he saw the automobile just before the accident, but he turned away and did not see the accident.

Appellant contends that the court erred in refusing to instruct the jury, as requested by her,[1] to the effect that if appellant, by reason of injuries received in the accident, could not remember events which occurred prior to and at the time of the accident the law presumes that at the time of and immediately preceding the accident she was exercising ordinary care for her own concerns. Appellant testified regarding events occurring before she arrived at the white line and before she left the white line and "started on across the street." Of course as to the period of time covered by those events, when there was no loss of memory, the presumption regarding due care was not applicable. Respondent (defendant) argues to the effect that the presumption was not applicable to the period of time after she left the white line and before she was struck, for the reasons that: (1) the evidence was insufficient to prove a loss of memory as to that period of time; and (2) the period of time was only a second or two and she had gone only a few feet, approximately five feet (that is from the white line to the middle of the 10-foot north lane). In determining whether such an instruction should have been given the evidence should be considered in the light most favorable to appellant. (See *Wilbur* v. *Cull*, 145 Cal.App.2d 41, 42 [302 P.2d 41].) She was entitled to an instruction on her theory of the case if the evidence, viewed in the light favorable to her, would support her theory.

---

[1] "The plaintiff Luler Masterson claims that by reason of the injuries received by her in the collision with defendants' vehicle, she suffered a brain injury creating an amnesia or loss of memory relating to the events which occurred prior to and at the time of the accident. If you believe from a preponderance of the evidence that the plaintiff Luler Masterson suffered or sustained an injury which resulted in a loss of memory relating to the events occurring prior to and at the time of the collision, then I instruct you that the law presumes that at the time of and immediately preceding the collision in question the plaintiff Luler Masterson was exercising ordinary care for her own concerns and was obeying the law in her conduct."

(See *Selinsky* v. *Olsen,* 38 Cal.2d 102, 103 [237 P.2d 645];
*Young* v. *Carlson,* 128 Cal.App.2d 743, 744 [276 P.2d 23].)
██ She testified that she did not remember anything after
she left the white line. She sustained a severe concussion of
the brain and was unconscious for a few days. Dr. Cassady
testified that such a concussion might cause loss of memory.
The evidence was sufficient to support a finding that she did
not remember anything, concerning the happening of the
accident, after she left the white line.

██ It was a question of fact as to whether appellant
sustained a loss of memory with respect to the time elapsing
after she left the white line and before she was struck by the
automobile. (See *Hensley* v. *Harris,* 151 Cal.App.2d 821, 825
[312 P.2d 414].) If she sustained a loss of memory with
respect to that time, it cannot be said as a matter of law that
by reason of the short period of time, or short distance, she
was not entitled to the presumption of due care during that
period of loss of memory. Respondent asserts that appellant
traveled only halfway across the 10-foot lane, or 5 feet, during
that time and that only one or two seconds elapsed. Appar-
ently that assertion is based upon respondent's testimony that
he struck appellant when she was in the middle of the north
lane. In the view of the evidence favorable to the appellant
the jury might have found that the white line which she left
was the first white line and she traveled across the two
10-foot lanes and onto the shoulder before she was struck.
There was evidence that the automobile swerved to the right
(north) at the trailer park driveway and went 20 feet beyond
the center of the driveway and stopped partly off the pave-
ment, and that appellant was lying on the pavement 18 feet
beyond the stopped automobile. Even though only a com-
paratively short period of time elapsed after appellant left
the white line and before she was struck, if she sustained a
loss of memory with respect to that time, she, of course, was
not able to admit or deny the testimony ot defendant that
she was running across the north lane; nor was she able to
testify as to where she was when she was struck or as to
other important evidentiary matters.

In *Simon* v. *City & County of San Francisco.* 79 Cal.App.2d
590 [180 P.2d 393], plaintiff, a pedestrian, sought damages
for personal injuries sustained as a result of being struck by
a streetcar. He testified regarding the route he traveled before
he arrived at the curb (preceding the accident). He also
testified that after arriving at the curb he looked both ways

before he started to cross the street and he did not hear anything and that is all he remembered until he woke up in a hospital. He suffered a serious head injury and was in a comatose condition several days. In that case the trial court directed a verdict for defendants. In reversing the judgment, the reviewing court said at page 598: "The evidence most favorable to plaintiff shows that, as a result of the accident, he is unable to remember just how the accident occurred. It is now well settled in this state that where a plaintiff by reason of loss of memory is unable to testify respecting his conduct at and immediately before the time of the accident, and produces no witnesses who testify to such facts, he is entitled to the benefit of the presumption that he was exercising due care."

In *Hoppe* v. *Bradshaw*, 42 Cal.App.2d 334 [108 P.2d 947], plaintiff, a pedestrian, was struck by an automobile while he was crossing a highway. In that case, before plaintiff went upon the highway he walked across a platform which was about 20 feet square and was elevated above the ground two feet. Several automobiles were parked along the edge of the highway pavement. From the platform, plaintiff could have observed oncoming automobiles over the tops of the parked automobiles. After leaving the platform he started across the highway from behind the parked automobiles. He sustained a brain injury and had no recollection of the incidents from the time he crossed the platform until he regained consciousness a few days later. The trial court directed a verdict for defendants. In reversing the judgment, the reviewing court said at page 340: "In the instant case there appears to be sufficient evidence, if believed by the jury, to justify the conclusion, if drawn by the jury, that the appellant was deprived of his memory because of a head injury. If the jury so concluded, appellant would then be entitled to the benefit of the presumption." The presumption referred to therein was that the plaintiff exercised reasonable and ordinary care for his own safety.

In *Scott* v. *Burke*, 39 Cal.2d 388 [247 P.2d 313], it was said at page 394: "One who by reason of loss of memory is unable to testify concerning his conduct at and immediately before the time of the accident is entitled to invoke the same presumption, subject to the same exception." The presumption and exception referred to therein are indicated in the statement which preceded the above quotation, which statement was: " ' . . . an instruction that the deceased is presumed to

have exercised ordinary care for his own concerns is . . . proper' except that if the fact proved by uncontradicted testimony produced by the party seeking to invoke the presumption, 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertance . . . is wholly irreconcilable with the presumption . . . the latter is dispelled and disappears from the case.' ''

Appellant did not present any evidence with respect to the happening of the accident after she left the white line. If she suffered a loss of memory with respect to the period of time immediately before or at the time of the accident, that is, after she left the white line, she was entitled to the benefit of the presumption that she was exercising ordinary care for her own concerns during that time.

Respondent asserts further to the effect that if plaintiff was entitled to the benefit of the presumption of due care covering the period of time after she left the white line, the instruction, above quoted, which was requested by plaintiff was not a proper instruction. Respondent states that the instruction was too broad in that the instruction did not limit the presumption of due care to the time after plaintiff left the white line, but the instruction told the jury that if it found that plaintiff sustained a loss of memory she was entitled to the presumption that she exercised due care. In other words, respondent asserts that the requested instruction was to the effect that the presumption of due care included the time as to which plaintiff testified, that is, the time before she left the white line. It is true that the said instruction was not specific as to the period of time to which the presumption was applicable, that is, the instruction did not limit the application of the presumption to the time when there was a loss of memory. The instruction was not in proper form, and the judge was not required to modify it so that it would be in proper form. It appears, however, that the trial judge did not reject the instruction because it was not in proper form, but that he rejected it because he was of the opinion that the presumption of due care was not applicable. Upon the hearing of the motion for a new trial, the judge said: ''Well, I don't feel that the presumption can be invoked under the circumstances in this case when it is a matter of one or two or three seconds and it wasn't any more than that. Nearly all accidents occur in one second as a result of what someone does.'' Apparently the judge notified counsel for the parties, just before the argument to the jury, that the instruction

regarding the presumption of due care would not be given. (This is indicated by a statement of counsel for plaintiff upon the hearing of the motion for a new trial.) The court erred in not giving an instruction, in proper form, regarding the presumption of due care and limiting the application of the presumption to the period of time elapsing between the time plaintiff left the white line and the time of the accident.

By reason of the above conclusion, it is not necessary to discuss appellant's contention that the court erred in refusing to give her requested instruction regarding the doctrine of last clear chance.

The judgment is reversed.

Vallée, J., concurred.

Shinn, P. J., concurred in the judgment.

A petition for rehearing was denied February 21, 1958, and respondent's petition for a hearing by the Supreme Court was denied March 19, 1958. Shenk, J., Spence, J., and McComb, J., were of the opinion that the petition should be granted.