[Civ. No. 188. Fifth Dist. May 29, 1963.]

GUNTERT & ZIMMERMAN, SALES DIVISION, INC., Cross-complainant and Appellant, v. THERMOID COMPANY, Cross-defendant and Respondent.

Hays & Hays and James N. Hays, for Cross-complainant and Appellant.

Harold A. Parichan for Cross-defendant and Respondent.

STONE, J.—Cross-complainant appeals from a judgment denying it recovery from cross-defendant upon warranties express and implied. The case originated by a complaint filed by Oberti brothers, operators of an olive processing and packing plant, to recover damages caused by contamination of olives from the use of a steam hose which gave them a phenolic taste. Plaintiffs joined both appellant, the distributor who sold the hose, and respondent, who manufactured it, as defendants in the action. Appellant then cross-complained against respondent, alleging that if plaintiffs should recover damages because of the defective hose, appellant should recover the amount of any such damages from respondent.

After trial without a jury, the court found in favor of plaintiffs Oberti brothers and against jobber Guntert, but denied plaintiffs recovery against Thermoid, the manufacturer, on the ground there was no privity of contract between them. The court also denied recovery to cross-complainant jobber, the appellant herein, from cross-defendant manufacturer, the respondent herein, for breach of warranty upon the ground of disclaimer of warranty. The sole issue on this appeal is whether respondent effectively disclaimed its

warranty of fitness of the steam hose for the particular use for which it was sold.

Before canning, olives are pasteurized in wooden vats by steam circulation. The steam is conveyed from a central dispenser to a bank of four vats, by rubber hoses. Early in 1957 an agent of appellant-jobber sold Oberti brothers some cotton braid hose manufactured by respondent, to be used to convey steam to the pasteurizing tanks. Some months later at a sales meeting attended by the salesman who had sold the cotton hose to Oberti, a sales representative of respondent advised that cotton braid hose might not withstand the steam pressure required to pasteurize olives and that such use could result in damage to person and property. Respondent's manager recommended that appellant supply Oberti with one-wire braid Power-Flex hose manufactured by respondent. Accordingly appellant's salesman advised Oberti's superintendent of the danger of using cotton braid hose to convey steam under pressure and suggested the safer wire braid hose.

Pursuant to this suggestion the wire braid hose was purchased, but a 25-foot section was defective and leaked steam. Oberti's superintendent complained to appellant's local agent who, in turn, called respondent's agent; together they went to the Oberti plant. They inspected the processing room which was in operation, the defective hose was shown them, and they discussed with Oberti's superintendent hose types for use to convey steam. Respondent's agent concluded that the proper type hose was being used but that the particular hose was defective and should be replaced, which he agreed to do. Oberti's superintendent then ordered an additional 50 feet of hose. The new order, one piece 25 feet in length replacing the defective hose, and the additional 50 feet, was shipped by respondent directly to the Oberti plant. No trouble was experienced with the 25-foot replacement. The 50-foot length was cut in half and a 25-foot section used to convey steam for pasteurization. This section of hose gave the olives a phenolic taste, which caused them to be condemned as unfit for human consumption.

The trial court found that the salesman who represented appellant in the transaction was an agent and employee of appellant and that he was acting within the course and scope of his employment at all times. The court found also that the representative of respondent who accompanied appellant's salesman to the Oberti plant and who advised Oberti's super-

intendent that the hose was proper for the intended use, was at all times an agent and employee of respondent Thermoid Company and that he was acting within the course and scope of his employment. Further, the court found that there was privity of contract between appellant and respondent; that appellant as buyer made known to respondent as seller the particular purpose for which the hose in question was required; that appellant as buyer relied upon respondent as seller as to skill and judgment in the selection of the hose; that the hose sold from respondent to appellant was selected and recommended by respondent knowing the purpose for its ultimate use.

These findings are supported by ample evidence. However, the court also found that respondent made an express disclaimer known to appellant, and

"That Cross-Complainant [appellant] would be entitled to recover from Cross-Defendant [respondent] upon the basis of an express warranty arising out of statements made by Cross-Defendant's employees relating to the proper type of hose to be used by plaintiff knowing the purpose to which said hose would be put and the selection of the type of hose for such purpose, if said disclaimer had not been a part of the contract between said parties; said disclaimer prevents recovery by Cross-Complainant from Cross-Defendant upon the basis of express warranty; . . ."

Preliminarily, it must be pointed out that although the trial court predicated its finding of disclaimer of warranty upon a contract between appellant and respondent and the same position is taken by respondent, there was no dealer's contract or distributor's contract or agency agreement between respondent manufacturer and appellant distributor. The contract to which the court and respondent refer is alleged to have arisen by implication from appellant's use of respondent's price book.

The question presented on this appeal is whether the warranty clause or disclaimer of warranty contained in the price book furnished to appellant by respondent was applicable to the sale here involved. The price book contained a paragraph entitled "Warranty Clause" which reads:

"Items of our manufacture are warranted only to be free from defects in workmanship and material. The warranties herein set forth shall not be extended or varied in any way by any representations or statements made orally or in writ-

ing either prior to, at the time of, or subsequent to the placing of an order. Our liability is limited to the purchase price of any item proven defective or at our option to the replacement of such item upon its return to us. No claim for breach of warranty will be accepted unless delivered in writing to us within sixty (60) days after date of shipment by us. Under no circumstances shall the seller be responsible for consequential damages.''

It is understandable that respondent should insert a disclaimer of warranty in its price book since a sale made from a price book in the ordinary course of business is one strictly between the distributor and a member of the buying public with whom the manufacturer has no direct relations. Respondent would have no way of knowing the use to which its products are to be put when sales are made in this manner. It follows that a thoughtful manufacturer would protect itself by attaching a statement of warranty and disclaimers to its price book.

The sale here, however, was not the usual price book sale, and respondent did have knowledge of the use to which the product was to be put. It is even more critical that appellant's agent lacked knowledge concerning the type, the quality and the nature of a hose suitable for the particular operation, and for that reason he requested that respondent's agent accompany him to the Oberti plant for the specific purpose of making that determination. The plant was in operation when the representatives of appellant and respondent were there. Respondent's agent, who possessed the superior knowledge, observed the process in which the steam hose was being used. He discussed the particular problem directly with Oberti's superintendent.

The court found that respondent's agent recommended the hose to be used at the Oberti plant. Further, the findings reflect that the customer, Oberti brothers, relied upon those representations, as did appellant jobber, and for that reason the hose was purchased by Oberti brothers.

Respondent shipped the hose directly to Oberti and sent the invoice to appellant, so that appellant never had possession of the hose nor an opportunity to inspect it. In short, the entire transaction hinged upon the actions and representations of respondent, not appellant. Consequently the price book, of which the disclaimer of warranty is a part, was of no

concern in this transaction, and it is unavailing as a disclaimer in the particular sale before us.

Another line of *reasoning* leads us to the same result. We believe that a general disclaimer is ineffective against a subsequent express warranty. Although we find no California authority explicitly holding that a subsequent express or actual warranty supersedes or overrides a prior general disclaimer, there is dictum in *Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682 [268 P.2d 1041], indicating that the Supreme Court would under a set of facts similar to those before us, so hold. At page 694 Chief Justice Gibson, speaking for the court, said:

"Although there is evidence that the cooperative acted as consignee-agent of Sherwin Williams for the purpose of selling the spray and might therefore have authority to make representations which would counteract the disclaimer, there is no contention that any such representations were made."

Authority for this proposition is also found in Williston on Contracts. In volume 1 (3d ed.) at page 316, Williston has said:

"Disclaimers of warranty in seedmen's letterheads, billheads, catalogues, cards and tags have been held part of the contract where the disclaimer was in conspicuous type, or appeared consistently on each letterhead following the salutation in an interchange of correspondence. But where the disclaimer was in fine print *or where it contradicted an actual warranty, the disclaimer was held ineffectual.*" (Italics added.)

Although *Hobdy & Read* v. *Siddens* is a Kentucky case reported in 198 Ky. 195 [248 S.W. 505] we find persuasive the conclusion of the court that an express warranty made by an agent acting within the scope of his authority, prevails over "the nonwarranty tags, cards, letterheads, and bills, . . ."

As we have pointed out, the agent of respondent in recommending the proper hose to be used, which hose contaminated the olives, was acting within the course and scope of his duties as an agent of respondent. Furthermore, he made the representations directly to the consumer who used the product. Thus the consumer and appellant-distributor both relied upon the express warranty of fitness for the intended use made by respondent's agent, which warranty was made subsequent to the issuance of the price book and made completely apart from it.

■ Finally, respondent points out that when the goods were shipped directly to the consumer, Oberti brothers, by respondent-manufacturer, an invoice was sent to appellant-distributor and at the bottom of the invoice in small print along with other matters concerning credit, transportation costs, etc., there was the following statement: "Goods shipped subject to standard warranty clause contained in contract and acknowledgment."

Respondent argues that this language incorporates the warranty in the price book as a part of the instant sale. We do not believe the footnote on the invoice is subject to such a construction. First, reference is made to a contract, while there was no dealership, distributorship or agency contract between respondent and appellant so far as the record before us reflects. Secondly, the small print refers to an acknowledgment, apparently an acknowledgment of warranty disclaimer of some sort, but the evidence discloses none. On the contrary, the goods were shipped directly to the consumer and appellant made no acknowledgment prior to Oberti's receipt of the hose.

We deem the small print at the bottom of the invoice ineffectual as a disclaimer of the express warranty of fitness for a particular use made by respondent's agent acting within the course and scope of his authority. (*India Paint & Lacquer Co.* v. *United Steel Products Corp.*, 123 Cal.App.2d 597, 607 [267 P.2d 408].) ■ Disclaimers of express and implied warranties are construed strictly against the seller. (*Roberts Distrib. Co.* v. *Kaye-Halbert Corp.*, 126 Cal.App.2d 664, 669 [272 P.2d 886]; *Burr* v. *Sherwin Williams Co.*, supra, p. 694.)

The judgment is reversed.

Conley, P. J., and Brown (R.M.), J., concurred.