[Civ. No. 21040. First Dist., Div. One. Dec. 2, 1964.]

MARCELLIANO ALVAREZ, Plaintiff and Appellant, v. FELKER MANUFACTURING COMPANY, Defendant and Respondent.

Thorne, Stanton, Clopton, Herz & Stanek, John E. Thorne and Hebert S. Stanek for Plaintiff and Appellant.

Carroll, Davis, Burdick & McDonough and Gerald P. Martin, Jr., for Defendant and Respondent.

MOLINARI, J.—Plaintiff appeals from a judgment for defendant, Felker Manufacturing Company (hereinafter referred to as Felker) after a jury verdict in a personal injury action.[1] The appeal is directed solely to the propriety of certain jury instructions. Specifically, the questions presented are whether the trial court erred in refusing to instruct the jury on the issue of agency and whether defendant's instructions Nos. 45 and 47 given by the court were erroneous, and, if so, whether they were prejudicially erroneous. We shall consider these questions, separately, after setting out the pertinent facts as disclosed by the record, and discussing the principles enunciated by the recent cases of *Greenman* v. *Yuba Power Products, Inc.*, 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897] and *Vandermark* v. *Ford Motor Co.*, 61 Cal. 2d 256 [37 Cal.Rptr. 896, 391 P.2d 168].

---

[1]Plaintiff also appeals from the order denying his motion for a new trial. Such an order is nonappealable. (Code Civ. Proc., § 963.) However, upon appeal from a final judgment, the court may review an order denying a motion for a new trial. (Code Civ. Proc., § 956; *Litvinuk* v. *Litvinuk*, 27 Cal.2d 38, 42 [162 P.2d 8]; *Richards* v. *Gemco*, 217 Cal. App.2d 858, fn. 1, p. 859 [32 Cal.Rptr. 65].)

*The Record*

Plaintiff was injured while he was operating the concrete cutting machine owned by his employer, the James Griffiths Company (hereinafter referred to as Griffiths). At the time of the accident, the machine was equipped with a "Felker" blade, which had been supplied by Hickerson Supply Company (hereinafter referred to as Hickerson). Felker blades, including the particular blade in question, were obtained by Hickerson from Felker, for whom Hickerson was a distributor.

In manufacturing blades, Felker's standard size arbor hole was 1 inch. However, Hickerson, in order to provide blades for customers requiring varying arbor hole sizes, was in the habit of ordering blades with a 1¾-inch arbor hole and then reducing the size of the hole with "inserts" or "bushings" to fit the needs of any particular customer. Thus, Felker, in compliance with Hickerson's order, would bore out its standard 1-inch arbor blade to a 1¾-inch hole. Usually the bushings to be used in the blades were supplied by Felker upon the request of Hickerson. Sometimes they would be inserted in the blade at the Felker factory, in which case, Hickerson did not unwrap or inspect the package before sending it to the customer. At other times, the bushing would be sent by Felker along with the blade, so that Hickerson would have to insert the bushing into the blade. Still a third method of operation used by Felker, was to furnish the blade without a bushing, in which case Hickerson furnished and inserted a bushing from its own stock. Whenever Felker sent an unbushed blade—either accompanied or unaccompanied by a bushing—which required bushing, Hickerson made it a practice to lock the bushing in the arbor hole by means of a center punch, that is, by peening it at the point at which it slipped into the hole size of the blade. The record contains conflicting testimony as to whether the particular blade which plaintiff installed on the machine on the day of the accident had already been bushed at the factory or whether, on the other hand, the bushing had been inserted by Hickerson.

On the morning of July 23, 1956, the day on which the accident occurred, plaintiff inserted the Felker blade into the machine. He then proceeded to finish one job which required some use of the machine. Upon completion of this job, plaintiff transported the machine to the site of another job. He had just begun cutting when the accident occurred. Plaintiff testified that while he was using the saw, he heard an explo-

sion, felt something hit him in the eye, and moved back from the machine. As a result of the accident, plaintiff lost his right eye.

Much of the testimony at the trial concerned itself with the way in which plaintiff installed the blade onto the machine, it being Felker's contention that the malfunctioning of the machine was due to the improper installation of the blade and bushing by plaintiff. At his deposition, which was taken in 1959, plaintiff testified unequivocally and repeatedly that he inserted the blade and then the bushing onto the arbor. At the trial, however, he asserted that when he opened the package containing the blade, he found the bushing already inserted into the blade and that he installed the two together onto the machine, this being the correct method of installation. Sometime previous to the accident plaintiff had been included in a group which received a 10 to 20-minute demonstration in the use of the concrete cutting machine. Plaintiff had used the machine on several occasions prior to the accident. However, the record contains conflicting testimony as to whether plaintiff was acquainted with the Felker type blade and whether he had been instructed on how to insert it. Jack T. Regan, an officer of Griffiths, testified that plaintiff had used the Felker blade prior to the accident and that he had been instructed as to its use. Plaintiff stated that the Felker blade he had inserted in the machine on the day of the accident was the first he had ever seen, and that no one had ever discussed this blade with him prior to the accident.

Various personnel of Griffiths, Hickerson, and Felker testified as to the appearance of the blade following the accident. It was also noted by those witnesses, who were at the site of the accident, that segments from the blade were found on the ground beside the machine immediately following the accident. At the trial the machine itself was operated both with a properly and improperly installed blade and moving pictures were shown of similar demonstrations.

Plaintiff sought recovery against Felker based upon a complaint alleging several counts couched upon the theories of breach of warranty and negligence.[2]

---

[2]Plaintiff also sought recovery against Hickerson. However, prior to trial, the action as to Hickerson was dismissed with prejudice by plaintiff.

## The Greenman and Vandermark Cases

■ The instant case was tried before the decisions of our Supreme Court in *Greenman* and *Vandermark*.[3] In view of the principles announced in these cases relative to the liability of a manufacturer and the rule of strict liability therein declared we must consider whether these principles are applicable to the case at bench before proceeding to consider the propriety of the instructions which form the basis of this appeal.

In *Greenman* it was held that a manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect which causes injury to a human being. Accordingly, it was held that to establish a manufacturer's liability it is sufficient that a plaintiff prove he was injured as a result of a defect in the design and manufacture of the article while using it in a way it was intended to be used and that he was unaware that such defect made the article unsafe for its intended use. *Greenman* holds that this rule of strict liability is not based on the law of contract warranties, nor upon the theory of express warranties, nor upon the implied warranties of the sales act, nor upon negligence, but upon the law of strict liability in tort, the essence of which is that costs of injuries resulting from defective products are to be borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves.

The rule of strict liability announced in *Greenman* was held by *Vandermark* to apply also to a retailer of a defective product. It was held, moreover, in *Vandermark* that a manufacturer of a completed product cannot escape liability on the ground that the defect in the product may have been caused by something one of its authorized dealers did or failed to do. On page 261, the Supreme Court said: "Since the liability is strict it encompasses defects regardless of their source, and therefore a manufacturer of a completed product cannot escape liability by tracing the defect to a component part supplied by another." In *Vandermark,* the plaintiffs were injured in an automobile accident allegedly caused by the sudden failure of an automobile's braking system. In a complaint pleading causes of action for breach of warranty and negligence, the plaintiffs sued the Ford Motor

---

[3]The trial was had during June 1961. *Greenman* was decided in January 1962 and *Vandermark* in April 1964.

Company, the manufacturer of the automobile, and Maywood Bell, the authorized Ford dealer from whom one of the plaintiffs (Vandermark) had purchased the car. The evidence disclosed that Maywood Bell had removed the power steering unit before selling it to Vandermark, and, also, that the car had passed through two other authorized Ford dealers before it was sold to Maywood Bell. A judgment of nonsuit in favor of the Ford Motor Company and a judgment in favor of Maywood Bell upon a directed verdict were reversed upon the basis that the rule of strict liability was applicable. The Supreme Court held that since plaintiffs introduced or offered substantial evidence that they were injured as a result of a defect that was present in the car when Ford's authorized dealer delivered it to Vandermark, the trial court erred in granting a nonsuit on the causes of action by which plaintiffs sought to establish that Ford was strictly liable to them; and that since plaintiffs also introduced or offered substantial evidence that the defect was caused by some negligent conduct for which Ford was responsible, the trial court also erred in granting a nonsuit on the negligence causes of action. With respect to Maywood Bell the reviewing court noted that although plaintiffs sought to impose strict liability on the theory of sales-act warranties, they pleaded and introduced substantial evidence of all the facts necessary to establish strict liability in tort and that, accordingly, the trial court erred in directing a verdict for Maywood Bell on the so-called warranty causes of action.[4]

Insofar as the manufacturer is concerned, the Supreme Court in *Vandermark* particularly stressed that under the rule of strict liability the responsibility placed upon the manufacturer of a completed product for defects, whether negligently or nonnegligently caused, applies regardless of what part of the manufacturing process it chooses to delegate to third parties. The reviewing court noted that, under the evidence adduced, Ford delegated the final steps in the manufacturing process to its authorized dealers, and that it did not deliver cars to its dealers that are ready to be driven away by the ultimate purchasers, but relied upon the dealers to make the final inspection, corrections, and adjustments necessary to make the cars ready for use.

The principles declared in the *Greenman* and *Vandermark*

[4]The judgment after a jury verdict in favor of Maywood Bell on the negligence causes of action was affirmed on the basis that the issue was fully litigated.

cases are applicable here. The facts, as disclosed by the record, are such that they could fasten liability upon Felker under the law of strict liability in tort. From the evidence adduced, the trier of fact could find that Felker, a manufacturer, placed a blade on the market knowing that it was to be used without inspection for defects; that such blade proved to have a defect which caused injury to plaintiff while he was using the blade in the way it was intended to be used; and that plaintiff was unaware that the blade contained a defect which made it unsafe for its intended use.

## Refusal to Instruct on Agency

■■■ Plaintiff assigns as error the refusal of the trial court to instruct the jury on the law of agency. It is his position that the jury should have been allowed to predicate Felker's liability on the alleged negligence of Hickerson, its distributor. Although plaintiff argues that it was error for the trial court to refuse to instruct the jury on the law of agency, the question on appeal reduces itself to whether the trial court was justified in refusing to give the one instruction[5] submitted by plaintiff on this issue. Felker does not question the adequacy of this instruction, insofar as the principles of agency are concerned, but contends that agency was not an issue in the case and, therefore, cannot be raised for the first time on appeal. It is urged that the agency question was not put in issue by the pleadings or the pretrial order. Felker asserts, moreover, that even if it be assumed that agency was an issue, no evidence was adduced thereon at the trial which would warrant instructions on the law of agency.

■■■ Before proceeding to discuss the respective contentions of the parties, we should point out that no instruction on the law of agency is required or necessary insofar as the rule of strict liability in tort is concerned. Under the rule of the *Vandermark* case, Felker would be liable even though Hickerson was not its agent. Such liability extends to the manufacturer even though the defect was caused by a dealer or retailer who was not the agent or employee of the manu-

---

[5]The instruction on agency requested by plaintiff and refused by the trial court is as follows: ''California Civil Code section 2295 defines an agent as follows: 'An agent is one who represents another, called the principal, in dealing with third persons. Such representation is called an agency.' The defendant Felker Manufacturing Company, being a corporation, it can only act through its agents and employees. A party dealing with an agent who was acting within the scope and authority of his agency is to be considered as dealing with the principal himself.''

facturer. ■ Nor is the issue of agency of any moment where recovery is sought on the theory of implied warranty of fitness for use and of merchantable quality in cases where the instrumentality is dangerous if it contains latent defects or is improperly used. In such cases the implied warranties of fitness and merchantability run from the manufacturer to the consumer even though the latter is not in contractual privity with the former. (See *Peterson* v. *Lamb Rubber Co.,* 54 Cal.2d 339, 343 [5 Cal.Rptr. 863, 353 P.2d 575]; *Greenman* v. *Yuba Power Products, Inc., supra,* at p. 63.) ■ The question of agency, therefore, is of consequence with respect to the causes of action by which plaintiff sought to establish liability on the theories of negligence and express warranty. ■ The liability of a principal for the negligent acts of his agent done within the scope of the latter's authority is so well established as to need no citation of authority. ■ With respect to express warranties, a principal may be bound by such warranties made by his agent because an agent authorized to sell personal property has the authority to warrant the quality of the property. (Civ. Code, § 2323; see *Stott* v. *Johnston,* 36 Cal.2d 864, 869-870 [229 P.2d 348, 28 A.L.R.2d 580]; *Morris* v. *Fiat Motor Sales Co.,* 32 Cal.App. 315, 317 [162 P. 663]; *Guntert & Zimmerman, Sales Division, Inc.* v. *Thermoid Co.,* 216 Cal. App.2d 771, 774-776 [31 Cal.Rptr. 99].)

An analysis of plaintiff's amended complaint shows the only statement as to the relationship existing between Felker and Hickerson to be that which alleges that "Hickerson . . . was the sole and exclusive agent and distributor for the sale [of] abrasive wheel[s] for the San Jose Area." The negligence allegations are confined to Felker with no mention being made of Hickerson. ■ It is the rule in California, however, that in order to hold the principal liable for the acts of his agent it is not necessary to allege that the agent was negligent. It suffices to allege that the principal was negligent. As stated in *Golceff* v. *Sugarman,* 36 Cal.2d 152, 154 [222 P.2d 665] : " 'In order to state a cause of action against defendant for a wrong committed by his servant, the ultimate fact necessary to be alleged is that the wrongful act was in legal effect committed by defendant. This may be alleged either by alleging that defendant by his servant committed the act, or, without noticing the servant, by alleging that defendant committed the act.' "

■ However, Felker puts particular stress on the pretrial conference order in support of its position that agency was not

an issue in the case. The order contains the following statements: "This action has been dismissed with prejudice as against defendant Hickerson Supply Company, Inc., the action then proceeding solely as against the defendant Felker Manufacturing Company. . . . All of these causes of action for negligence and warranty are based upon the acts of defendant Felker Manufacturing Company independent of any other named defendant." Felker contends that these statements expressly excluded from the trial the issue of agency. We do not agree with this contention. A fair interpretation of the subject language is that the only defendant against whom the action was proceeding was Felker. It is a strained interpretation which requires the meaning of this language to be that Felker is liable for its own acts, but is not liable for the acts of its agent who was named as a defendant. A corporation can only act through its servants, agents and employees. We do not think that it was the purport of the pretrial order to absolve Felker of liability resulting from the acts of Hickerson if it were established that Hickerson was its agent. ■ It is the rule, moreover, that where one of the parties introduces evidence on an issue which was not included in the pretrial order, and the other party makes no objection to such evidence, then, despite the scope of the pretrial order, the matter will be deemed in issue. (*Collison* v. *Thomas*, 55 Cal.2d 490, 498 [11 Cal.Rptr. 555, 360 P.2d 51].) ■ Thus, irrespective of the manner in which the issues were framed in the complaint and the pretrial order, plaintiff would be entitled to instructions on the issue of agency if evidence was adduced at the trial supporting such issue. ■ In determining whether or not the evidence supports an instruction that evidence must be viewed in the light most favorable to the party seeking the instruction. (*Selinsky* v. *Olsen*, 38 Cal.2d 102, 103 [237 P.2d 645].)

■ Plaintiff claims that "There was substantial testimony and documentary evidence relating to the relation between Hickerson . . . and . . . Felker. . . ." He calls attention to the following: Testimony by Mr. Hickerson that his company was "to all intents and purposes, . . . [Felker's] exclusive distributor in this particular territory," and that it got credit for all sales in the area whether made by Hickerson or not; testimony by Mr. Kuzmick, the manufacturing manager for Felker, that Felker literature was given to Hickerson to be used to promote sales of Felker products; a letter from Felker to Griffiths in which the former thanked the latter

for its inquiry regarding Felker's "Heavy Duty Concrete Cutter" and which concluded by stating: "We have referred your inquiry to our distributor: Hickerson Supply Company, 1190 Folsom Street, San Francisco 3, California. They will contact you and try to be of assistance to you in your concrete sawing problem"; testimony of Mr. Regan, an executive of Griffiths, that Felker material had been presented to him by Hickerson and that a man from Hickerson had showed him how to use the Felker blade; testimony by Mr. Hickerson that his company sometimes installed the bushings into Felker blades; and use of the term "our fault" by Mr. Hickerson, plaintiff claiming that Hickerson meant "Felker's fault."

Although this evidence does bear upon the relation between Hickerson and Felker, it does not, viewing it in the light most favorable to plaintiff, serve to establish the elements of an agency. ▇ The essential characteristics of an agency relationship as laid out in the Restatement are as follows: (1) An agent or apparent agent holds a power to alter the legal relations between the principal and third persons and between the principal and himself; (2) an agent is a fiduciary with respect to matters within the scope of the agency; and (3) a principal has the right to control the conduct of the agent with respect to matters entrusted to him. (Rest. 2d Agency, §§ 12, 13, 14, pp. 57-60.)

▇ There is nothing in the instant case to establish the first element set out in the Restatement. The record discloses that Hickerson bought goods outright from Felker and then resold them to customers. While the record does indicate that Hickerson had extensive dealings with Felker products, it is devoid of any evidence that Felker became legally bound by the contract of sale between Hickerson and the ultimate consumer as plaintiff contends.

▇ To bring his case within the fiduciary element of the agency relationship, plaintiff points out that an accounting of all sales of Felker blades in the Hickerson area was necessary in order to compute the amount owed to Hickerson for sales made in the area; that by returning the damaged blade to Felker, Hickerson revealed its duty to protect Felker; and that Felker referred its customers directly to Hickerson for distribution and service of Felker's products. ▇ These factors, however, fail to establish a fiduciary relationship, the real essence of which is a duty to act primarily for the benefit of another, rather than for one's own benefit. ▇ The record indicates affirmatively, on the other hand, that Hickerson sold

products of Felker's competitors and that it had no duty to promote or sell a certain number of Felker's products.

 As to the control element of a principal-agency relationship, plaintiff contends that such control by Felker was present in that Felker determined the materials and methods to be used by Hickerson in its assembly and distribution of Felker products; and in that Felker could determine the time and place of Hickerson's work by sending customers to Hickerson and by directing Hickerson to contact potential customers. Plaintiff gives no reference in the record for the first statement and we find no evidentiary support for it. As to the second assertion, although the record does indicate that Felker did refer customers to Hickerson, the conclusion drawn by plaintiff that Felker could determine the time and place of Hickerson's work is clearly unjustified. To the contrary, the evidence was to the effect that Hickerson was free to decide whether it would deal with the customers referred to it by Felker.

 We are satisfied that under the state of the record the only inference that could be drawn as to the relationship between Felker and Hickerson was that it was one of buyer and seller. The applicable principle is stated in the Restatement as follows: ''One who receives goods from another for resale to a third person is not thereby the other's agent in the transaction: whether he is an agent for this purpose or is himself a buyer depends upon whether the parties agree that his duty is to act primarily for the benefit of the one delivering the goods to him or is to act primarily for his own benefit.'' (Rest. 2d Agency, § 14 J., p. 73.) The various factors recognized by the Restatement as aids in distinguishing the buyer-seller relationship from that of agency are present in the instant case. They are as follows: Hickerson got legal title and possession of the blades; Hickerson became responsible for an agreed price either at once or when the goods were sold; Hickerson could fix the price at which it sold without accounting to Felker for the difference between what it obtained and the price it paid; the blades were received on occasion in an incomplete or unfinished state, i.e., without the bushing, and it was understood between Felker and Hickerson that the latter would complete the process of manufacture by affixing the bushing to the blade; the risk of loss by accident was on Hickerson; Hickerson dealt and had the right to deal with the goods of persons other than Felker; and, finally, Hickerson dealt with the purchasers of the blades in its own name.

In his treatise on sales, Mecham notes that the relationship referred to as ''exclusive distributorship'' or ''exclusive agency,'' whereby the owner or manufacturer of patented or other proprietary articles grants the privilege of sale or of exclusive territory to one who otherwise might not be at liberty to sell the goods in question, is not an ''agency in fact'' but simply a sale of a proprietary article with a right of resale under terms and conditions fixed by the proprietor. (1 Mecham on Sales, pp. 41, 42; see *Reiter* v. *Anderson*, 87 Cal.App. 642, 648 [262 P. 415].)

In the light of the foregoing principles, the trial court was justified, under the state of the record, in concluding that as a matter of law the relationship between Felker and Hickerson was not that of principal and agent, but rather that of seller and buyer. Even assuming *arguendo* that there was ample evidence of an agency relationship which would have warranted instructions on agency, we are satisfied that the trial court would have been justified in refusing to give the instruction submitted by plaintiff. Although a party has a right to instructions on his theory of the case if it is reasonable and finds support in the pleadings and evidence (*Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal.App.2d 96, 99 [28 Cal.Rptr. 560]), he may not complain of the failure to instruct on a particular issue where he has not re-quested a specific, proper instruction. (*Costa* v. *A. S. Upson Co.*, 215 Cal.App.2d 185, 190 [30 Cal.Rptr. 66]; *Korakakis* v. *Freeman*, 178 Cal.App.2d 331, 335 [2 Cal.Rptr. 802].) There is no error by a trial court in refusing a proposed instruction which is incomplete or misleading (*Pobor* v. *Western Pac. R.R. Co.*, 55 Cal.2d 314, 324 [11 Cal. Rptr. 106, 359 P.2d 474]), nor is it required to correct, modify, or edit an incomplete proposed instruction. (*Pemberton* v. *Ince Bros. etc. Constr. Co.*, 208 Cal.App.2d 167, 174 [23 Cal.Rptr. 38]; *Masterson* v. *Ward*, 157 Cal.App.2d 142, 150 [320 P.2d 613].) The instruction submitted in the instant case was incomplete. It merely defines the term ''agent'' and then that Felker, as a corporation, can only act through its agents and employees and that a person dealing with such an agent is dealing with the principal. While such instruction was correct as an abstract proposition of law, it does not set forth, even poorly, the essentials of the theory of agency. No instructions were submitted telling the jury what was required to establish a principal and agent relation-ship, defining the scope of an agent's authority, and stating

that a principal is liable for the acts of his agent within the scope of the agent's employment or authority.

### Defendant's Instruction No. 47

 Over plaintiff's objection the trial court gave defendant's instruction No. 47, as follows: "You are instructed that if you should find that the accident in question was proximately caused by any mismounting, misuse or abuse of the blade in question by the Plaintiff, then there can be no recovery upon the grounds of breach of warranty." Plaintiff claims that this was an improper instruction since "there is no testimony or evidence of any kind which indicates that the blade had been abused, misused or mishandled by plaintiff. . . ." Plaintiff would have us disregard entirely his deposition, read at the trial by Felker, wherein plaintiff gave testimony susceptible of the interpretation that he affixed the bushing on the blade in question by putting such bushing behind the blade rather than inside it. That the testimony is susceptible of such interpretation is conceded by plaintiff in his brief. He argues, however, that such testimony was offset by his demonstration at the trial, his own testimony at the trial, and Mr. Regan's testimony at the trial, all of which indicated that the installation was proper. Pursuant to Code of Civil Procedure section 2016, subdivision (d)(2), a deposition may be used for evidentiary purposes, and when it is the deposition of an adverse party it may be used for any purpose, that is, both as substantive evidence as well as to contradict or impeach the witness. (Witkin, Cal. Evidence (1958) §§ 579, 580, pp. 635-636; *Murry* v. *Manley,* 170 Cal. App.2d 364, 366-367 [338 P.2d 976].) Being evidence in the case, the testimony adduced at the deposition was entitled to consideration by the judge in determining whether or not a proposed instruction finds support in the evidence. The conflict of such testimony with other evidence in the case were matters for the jury to resolve.

 Moreover, plaintiff's own instructions indicated his awareness that he would be precluded from recovering if his injury was proximately caused by his misuse of the blade and that the evidence warranted an instruction to such effect. In plaintiff's instruction No. 7, which the trial court gave, we find this language: ". . . Defendant is liable for any damages proximately caused by such breach of warranty, *unless you further find that the Plaintiff's use of the blade was abnormal.*" (Italics added.) In sum, the record contains evi-

dence that plaintiff's alleged mishandling of the blade was an issue, the existence of which plaintiff himself recognized. We conclude, therefore, that the trial court did not err in giving defendant's instruction No. 47.

### Defendant's Instruction No. 45

 The trial court gave the following instruction submitted by Felker: "If you should find that it is just as probable that the accident in question was proximately caused by some mishandling or misuse, if any, of the wheel, after it left the control of Defendant, as it is that it resulted from some defect, if any, in the wheel itself, then, if you so find, your verdict should be for the Defendant." This is an erroneous statement of the law insofar as a manufacturer's strict liability in tort is concerned. Under the rule announced in *Vandermark* Felker would be strictly liable in tort if the injury was proximately caused by some mishandling or misuse of the blades by Hickerson. The fact that the blade had left the control of Felker would not eliminate its legal responsibility for the injury. The crucial question is whether Felker delegated some phase of its manufacturing process to Hickerson. There is ample evidence in the record to support the inference that Hickerson made the corrections and adjustments necessary to make the blade ready for use. This evidence finds its basis in the inference which the jury could draw that the blade which Felker sold to Hickerson was not ready for use until a bushing was installed in it by Hickerson. Under the circumstances, an instruction which told the jury that in such a situation Felker would not be liable for what Hickerson did or failed to do would do violence to the rule of strict liability. Such an instruction was prejudicially erroneous because it exonerated Felker for an injury resulting from a defect in the design and manufacture of the blade which made it unsafe for its intended use in the situation where Felker left the completion of its product to Hickerson, its authorized dealer.

The confusion which such instruction caused the jury is reflected in the colloquy between the trial court and the jury subsequent to the commencement of the jury's deliberations. After the jury had deliberated for approximately three hours it returned to the courtroom and one of the jurors asked the trial judge the following question: "I want to know if Felker is legally responsible for something that Hickerson has done?" The court responded: "The answer to that question

is 'no.' '' In view of the principles declared in *Vandermark* this statement by the trial court was prejudicially erroneous.[6]

### Conclusion

Plaintiff's complaint pleaded nine separate counts. Six of these[7] are predicated upon Felker's alleged negligence, although in three of the counts[8] it was also alleged that Felker made certain representations in its brochure with respect to the blade upon which plaintiff's employer, the purchaser thereof, relied. The seventh count is based upon the implied warranties of merchantability and fitness for intended use, although this count likewise contains allegations that Felker made certain representations in its brochure with respect to the blade upon which plaintiff's employer relied. The eighth count, after alleging the aforesaid representations and reliance thereon, alleges that plaintiff was a third party beneficiary of the agreement between Felker and Griffiths. The ninth and last count is based upon express warranties allegedly contained in certain sales brochures, advertising and labels.

The issues of Felker's liability for negligence, for breach of express warranty and for breach of the implied warranties under the Uniform Sales Act were fully litigated. Although the evidence was in conflict, we are convinced from an examination of the record that no prejudicial error occurred in presenting the negligence, express warranty and sales act warranty counts to the jury.

At the time the instant case was tried, the cases indicated that the rule of strict liability upon a manufacturer, recognized first in the case of unwholesome food products (*Klein* v. *Duchess Sandwich Co., Ltd.*, 14 Cal.2d 272 [93 P.2d 799]; *Vaccarezza* v. *Sanguinetti*, 71 Cal.App.2d 687 [163 P.2d 470]) and subsequently extended to a variety of other products that create as great or a greater hazard if defective (*Peterson* v. *Lamb Rubber Co., supra*, 54 Cal.2d 339 (grinding wheel); *Vallis* v. *Canada Dry Ginger Ale, Inc.*, 190 Cal.App.2d 35, 42-44 [11 Cal.Rptr. 823] (bottle); *Jones* v. *Burgermeister Brewing Corp.*, 198 Cal.App.2d 198, 204 [18 Cal.Rptr. 311] (bottle); *Gottsdanker* v. *Cutter Laboratories*, 182 Cal.App.2d 602, 607 [6 Cal.Rptr. 320, 79 A.L.R. 290] (vaccine)) was based upon the theory of an express or an implied warranty running from the manufacturer to the plaintiff. (See *Green-*

---

[6]In fairness to the trial judge we must again point out that the *Vandermark* case had not yet been decided.

[7]Counts 1, 2, 3, 4, 5 and 6.

[8]Counts 1, 2 and 3.

*man* v. *Yuba Power Products, Inc., supra,* at p. 63.) In the absence of express warranties, it was generally believed that the liability of a manufacturer of an inherently dangerous item which proved to be defective was based upon the theory of breach of the implied warranties of the sales act.[9] (See *Peterson* v. *Lamb Rubber Co., supra,* at p. 343; and see *Greenman* v. *Yuba Power Products, Inc., supra.*) The nature of the strict liability of a manufacturer resulting from the sale of defective products was finally put to rest by *Greenman* which declared that such liability is not one governed by the law of contract warranties or the implied warranties of the sales act, but by the law of strict liability in tort, and that the rules defining and governing warranties ''cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed.'' (P. 63.)

As previously noted, it is now settled that such liability may be pleaded in a cause of action sounding in breach of warranty as long as all the facts necessary to establish strict liability in tort are pleaded. (*Vandermark* v. *Ford Motor Co., supra,* p. 263.)

In the instant case, although plaintiff sought to impose liability on Felker on the theory of negligence, express warranty and implied warranty under the sales act, he pleaded sufficient facts to establish strict liability in tort. In his amended complaint, plaintiff alleged that he was injured by the Felker blade as a result of a defect in its design and manufacture of which he was not aware while he was using such blade in a way it was intended to be used. Substantial evidence was produced at the trial of all the facts necessary to establish such strict liability. Evidence was adduced from which the jury could infer that the Felker blade which plaintiff affixed to the cutting machine was placed on the market by Felker with the bushing affixed to the arbor hole knowing that it was to be used without inspection for defects by the user. There was ample evidence, also, that plaintiff was injured while using the blade in the manner in which it was intended to be used, that by reason of its ''explosion'' or disintegration the blade contained a defect in design or manufacture, and that plaintiff was not aware that such defect made the blade unsafe for its intended use. In view of the jury's verdict, we may assume that the jury chose to believe

[9]See Civ. Code, §§ 1732 and 1735.

that the bushing was affixed to the arbor hole by Hickerson and that because of defendant's instruction No. 45 it was constrained to find that in such circumstance Felker was not liable. The evidence was sufficient for the jury to draw the inference that Felker delegated a part of the manufacturing process to Hickerson when it knew that the latter would affix a bushing of appropriate size to the blade either from its own stock or one shipped by Felker with the blade. Under these circumstances the jury could have found against Felker under the *Vandermark* rule were it not for the erroneous instruction.

 While the judgment must be reversed, it is not necessary to order a retrial of the issues which have already been determined. Where the error found to have been committed has affected the determination of but one or more of a greater number of distinct and severable issues or causes of action we need only reverse the judgment in part. (*Gray* v. *Cotton,* 166 Cal. 130, 139 [134 P. 1145]; *Lobree* v. *L. E. White Lumber Co.,* 53 Cal.App. 85, 92 [199 P. 821]; see *Shepardson* v. *McLellan,* 59 Cal.2d 83, 88-90 [27 Cal.Rptr. 884, 378 P.2d 108].) Accordingly, we order such a partial reversal here.

The judgment is reversed insofar as the issue of strict liability in tort is concerned, and the cause is remanded with directions to the trial court to try the issue of whether Felker is strictly liable in tort under the principles declared in the *Greenman* and *Vandermark* cases and to retry the issue of the damages. In all other respects the judgment is affirmed. The appeal from the order denying plaintiff's motion for a new trial is dismissed. Plaintiff shall recover one-half of his total costs on appeal from defendant, and defendant shall recover one-half of its total costs on appeal from plaintiff.

Sullivan, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.